ACCEPTED
13-15-00327-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
8/31/2015 8:04:46 AM
CECILE FOY GSANGER
CLERK

No. 13-15-00327-CV

In the Thirteenth Court of Appeals
Corpus Christi, Texas

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
8/31/2015 8:04:46 AM
DORIAN E. RAMIREZ
Clerk

BTB REFINING, LLC

Appellant,

v.

MOHAMMAD ANWAR FARID AL-SALEH,

Appellee.

On Appeal from No. 2014-DCV-5860-G, 319th Judicial District Court,
Nueces County, Texas, Hon. David V. Stith

**BRIEF OF APPELLANT**

Mark T. Mitchell
State Bar No. 14217700
Gardere Wynne Sewell LLP
600 Congress Avenue, Suite 3000
Austin, Texas 78701
Tel:   512.542.7072
Fax:  512.542.7272
mmitchell@gardere.com

Deirdre B. Ruckman
Texas Bar No. 21196500
Stacy R. Obenhaus
Texas Bar No. 15161570
Debbie E. Green
Texas Bar No. 24059852
Gardere Wynne Sewell LLP
3000 Thanksgiving Tower
Dallas, Texas 75201
Tel:   214.999.3000
Fax:  214.999.4667
druckman@gardere.com
sobenhaus@gardere.com
dgreen@gardere.com

COUNSEL FOR APPELLANT
BTB REFINING, LLC

**ORAL ARGUMENT REQUESTED**

## Identity of Parties and Counsel

**Defendant-Appellant:**

BTB Refining, LLC

**Counsel:**

Mark T. Mitchell
Gardere Wynne Sewell LLP
600 Congress Avenue, Suite 3000
Austin, Texas 78701

Deirdre B. Ruckman
Stacy R. Obenhaus
Debbie E. Green
Gardere Wynne Sewell LLP
3000 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201

**Plaintiff-Appellee:**

Mohammad Anwar Farid
Al-Saleh

**Counsel:**

Daniel D. Pipitone
Kenneth W. Bullock II
Sameer S. Karim
Munsch Hardt Kopf & Harr PC
Pennzoil Place
700 Milam, Suite 2700
Houston, Texas 77002

Edward H. Davis Jr.
Astigarraga Davis Mullins & Grossman PA
1001 Brickell Bay Drive, 9th Floor
Miami, Florida 33131

J.A. "Tony" Canales
2601 Morgan Avenue
Corpus Christi, Texas 78405

i

# TABLE OF CONTENTS

Statement of the Case ............................................................................. 1

Issue Presented ....................................................................................... 2

Statement of Facts .................................................................................. 3

    I.     BTB'S FORMATION AND OPERATIONS ................................ 3

    II.    AL-SALEH'S FLORIDA JUDGMENT AND TEXAS LAWSUIT ............ 5

Summary of the Argument ...................................................................... 7

    I.     BURDEN OF PROOF AND STANDARD OF REVIEW ................. 9

    II.    PLAINTIFF WAS NOT ENTITLED TO A PRE-JUDGMENT ASSET-FREEZING INJUNCTION .............................................. 10

         A.    Al-Saleh Has Made No Claim for Equitable Relief .......... 15

         B.    Al-Saleh Has No Lien Upon, or Equitable Interest In, BTB's Assets ............................................................. 19

    III.   THE DISTRICT COURT'S PRE-JUDGMENT INJUNCTION IS AN IMPROPER PRE-JUDGMENT ATTACHMENT ....................... 22

         A.    The District Court's Temporary Injunction Improperly Granted Al-Saleh A Pre-Judgment Remedy To Which He Was Not Entitled ......................... 22

         B.    BTB Does Not Have An Adequate Remedy At Law To Obtain Relief From the District Court's Improper Pre-Judgment Attachment Of Its Money ......................... 28

    IV.   As CONCERNING BTB, AL-SALEH HAS ALREADY OBTAINED HIS ADEQUATE REMEDY AT LAW ................................... 30

Prayer ................................................................................................... 31

Certificate of Compliance ..................................................................... 313

Certificate of Service..................................................................................313

Appendix A ...............................................................................................314

Appendix B................................................................................................315

Appendix C ...............................................................................................316

Appendix D ...............................................................................................317

Appendix E................................................................................................318

Appendix F ................................................................................................319

# INDEX OF AUTHORITIES

**Page(s)**

CASES

*Alliance Royalties, LLC v. Boothe,*
313 S.W.3d 493, 497 (Tex. App. — Dallas 2010, no pet.) ............................ 22

*Animale Grp. Inc. v. Sunny's Perfume, Inc.,*
256 F. App'x. 707 (5th Cir. 2007) ................................................................. 17

*In re Argyll Equities, LLC,*
227 S.W.3d 268 (Tex. App. — San Antonio 2007, no pet.) ..................... 24, 28

*Behringer Harvard Royal Island, LLC v. Skokos,*
No. 05-09-00332-CV, 2009 WL 4756579 (Tex. App. — Dallas Dec. 14,
2009, no pet.) ............................................................................................... 12

*In re Boyd,*
No. ADV 12-05107, 2012 WL 5199141 (Bankr. W.D. Tex. Oct. 22,
2012) ............................................................................................................. 17

*Buerger v. Wells,*
222 S.W. 151 (Tex. 1920) .............................................................................. 26

*Butnaru v. Ford Motor Co.,*
84 S.W.3d 198 (Tex. 2002) .............................................................................. 9

*Campbell v. Adventist Health Sys./Sunbelt, Inc.,*
946 S.W.2d 617 (Tex. App. — Fort Worth 1997, no writ) ......................... 24

*City of Lubbock v. Coyote Lake Ranch, LLC,*
440 S.W.3d 267 (Tex. App. — Amarillo 2014, pet. filed) ............................ 9

*Credit Agricole Indosuez v. Rossiyskiy Kredit Bank,*
729 N.E.2d 683 (N.Y. 2000) ......................................................................... 16

*De Beers Consol. Mines, Ltd. v. United States,*
325 U.S. 212 (1945) .................................................................................. 11, 13

*Deckert v. Independence Shares Corp.,*
    311 U.S. 282 (1940) ................................................................. 15

*In re Derivium Capital, LLC,*
    396 B.R. 184 (Bankr. D. S.C. 2008) ...................................... 17

*Dittmann v. D.B. Zwirn & Co.,*
    No. CIV.A. H-09-402, 2009 WL 411562 (S.D. Tex. Feb. 13, 2009) .............. 21

*In re Enron Corp. Secs. Litig.,*
    No. CIV.A. G-02-0084, 2002 WL 1001058 (S.D. Tex. May 16, 2002) ......... 14

*Enzo Invs., LP v. White,*
    --- S.W.3d ----, 2015 WL 3524461 (Tex. App.—Houston [14th Dist.]
    June 4, 2014, pet. filed) ...................................................... 19, 30

*F.D.I.C. v. Gold Park Dev.,*
    No. CIV.A. 6:00-MC-24, 2008 WL 2325625 (E.D. Tex. June 3, 2008) ........ 25

*Forester v. El Paso Elec. Co.,*
    329 S.W.3d 832 (Tex. App.—El Paso 2010, mandamus denied) .............. 18

*Frederick Leyland & Co. v. Webster Bros. & Co.,*
    283 S.W. 332 (Tex. Civ. App.—Dallas 1926, writ dism'd w.o.j.) .............. 11

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.,*
    527 U.S. 308 (1999) ................................. 7, 10, 11, 12, 14, 15, 16, 17, 19, 20

*Gulf Oil Co. U.S. v. First Nat'l Bank of Hereford,*
    503 S.W.2d 300 (Tex. Civ. App.—Amarillo 1973, no writ) ....................... 21

*Hahn v. Love,*
    321 S.W.3d 517 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).. 18, 19

*Hanson v. Guardian Trust Co.,*
    150 S.W.2d 465 (Tex. App.—Galveston 1941, pet. dism'd) ..................... 26

*Harper v. Powell,*
    821 S.W.2d 456 (Tex. App.—Corpus Christi 1992, no writ) ................ 12, 23

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.,*
  295 F. Supp. 2d 366 (S.D.N.Y. 2003) ........................................................ 16, 17

*KCM Fin. LLC v. Bradshaw,*
  457 S.W.3d 70 (Tex. 2015) ........................................................................ 18, 19

*Lane v. Baker,*
  601 S.W.2d 143 (Tex. Civ. App. — Austin 1980, no writ) ........................... 12

*Marketshare Telecom, L.L.C. v. Ericsson, Inc.,*
  198 S.W.3d 908 (Tex. App. — Dallas 2006, no pet.) ...................................... 9

*Netsphere, Inc. v. Baron,*
  703 F.3d 296 (5th Cir. 2012) ..................................................................... 21, 22

*Newby v. Enron Corp.,*
  188 F. Supp. 2d 684 (S.D. Tex. 2002) ............................................................ 17

*Nowak v. Los Patios Investors, Ltd.,*
  898 S.W.2d 9 (Tex. App. — San Antonio 1995, no writ) ................... 12, 13, 14

*In re Radiant Darkstar Prods., LLC,*
  No. 05-13-00586-CV, 2013 WL 3718065 (Tex. App. — Dallas July 12,
  2013, mandamus denied) ............................................................................... 25

*U.S. ex rel. Rahman v. Oncology Assocs.,*
  198 F.3d 489 (4th Cir. 1999) ............................................................... 17, 20, 21

*Reach Grp., L.L.C. v. Angelina Grp.,*
  173 S.W.3d 834 (Tex. App. — Houston [14th Dist.] 2005, no pet.) .............. 14

*Reyes v. Burrus,*
  411 S.W.3d 921 (Tex. App. — El Paso 2013, pet. denied) ....................... 12, 14

*In re Rood,*
  448 B.R. 149 (D. Md. 2011) ............................................................................ 17

*S.R.S. World Wheels, Inc. v. Enlow,*
  946 S.W.2d 574 (Tex. App. — Fort Worth 1997, no writ) ................. 23, 24, 28

*In re Tex. Am. Express, Inc.,*
190 S.W.3d 720 (Tex. App.—Dallas 2005, no pet.)............... 25, 26, 27, 28

*Tom James of Dallas, Inc. v. Cobb,*
109 S.W.3d 877 (Tex. App.—Dallas 2003, no pet.)........................................ 9

*UBS Secs. LLC v. Highland Capital Mgmt., L.P.,*
42 Misc.3d 580 (N.Y. Sup. Ct. 2013) ......................... 16

*Victory Drilling, LLC v. Kaler Energy Corp.,*
No. 04-07-00094-CV, 2007 WL 1828015 (Tex. App.—San Antonio
June 27, 2007, no pet.) ....................................................... 12, 14

*Walker v. Packer,*
827 S.W.2d 833 (Tex. 1992) .................................... 9

*Wheeler v. Blacklands Prod. Credit Ass'n,*
627 S.W.2d 846 (Tex. App.–Fort Worth 1982, no writ) ........................... 19

*Zahra Spiritual Trust v. United States,*
910 F.2d 240 (5th Cir. 1990) ..................................... 17

STATUTES

TEX. CIV. PRAC. & REM. CODE § 51.014(a)(4) ................................. 29

TEX. CIV. PRAC. & REM. CODE § 61.001 ........................ 24

TEX. CIV. PRAC. & REM. CODE § 61.002 ............................... 24

TEX. CIV. PRAC. & REM. CODE § 61.005 ............................... 24

TEX. CIV. PRAC. & REM. CODE § 63.001 ............................... 26

Texas Business Organizations Code § 101.112 .............................. 30, 31

## Statement of the Case

**Nature of the case:**

Lawsuit seeking to enforce a judgment debt against BTB Refining, LLC — which is not a party to the judgment — based on the theories of alter ego and fraudulent transfer (CR 38-167).

Appeal from a district court order issuing a temporary injunction freezing $21.8 million of BTB's funds — essentially a prejudgment writ of attachment.

**Course of proceedings:**

On June 4, 2015, the district court issued a temporary restraining order enjoining BTB from transferring $21.8 million to any entity in which Harry Sargeant III or defendant Mustafa Abu Naba'a has any interest, or which they otherwise operate or control, or to Abu Naba'a (CR 163). On June 26 and 30, 2015, the court held an evidentiary hearing on request for temporary injunction.

**Disposition below:**

On July 2, 2015, the district court signed its order granting the temporary injunction but expanding the asset freeze to preclude BTB and any of its "officers, agents, servants, employees, attorneys, principals, members, managers, and other persons in active concert or participation with . . . from using or transferring to any person or entity $21,828,446.65 or transferring such amount out of the jurisdiction of this Court . . . until further Order of [the] court" (CR 337-339).

1

## Issue Presented

The fundamental question in this appeal is whether the district court abused its discretion in entering an injunction freezing millions of dollars of assets of BTB Refining, LLC until trial. That question raises this issue:

Plaintiff Mohammad Farid Al-Saleh has no judgment against BTB and brought this lawsuit to attempt to hold BTB liable for Al-Saleh's money judgment against defendant Harry Sargeant III under theories of alter ego and fraudulent conveyance. The district court abused its discretion in ruling that a temporary injunction was available to preserve BTB's cash as security for a potential money judgment against BTB in Al-Saleh's favor.

## Statement of Facts

### I. BTB's FORMATION AND OPERATIONS.

In 2001, Trigeant Ltd., a limited partnership indirectly owned by Sargeant and his family, purchased and began operating an asphalt production facility in Corpus Christi, Texas, that refines crude oil (CR 99-100). In December 2006, Trigeant borrowed $22 million from American Capital Financial Services, Inc. ("AmCap") in exchange for a lien on substantially all of Trigeant's assets, including the refinery (the "Corpus Christi Refinery") (CR 101). In the fall of 2007, Trigeant defaulted on the loan and AmCap noticed the Corpus Christi Refinery for foreclosure (CR 102-03).

On December 10, 2007, BTB Refining LLC was formed, wholly owned by Sargeant (CR 100). BTB negotiated to purchase AmCap's note and lien for $21,828,446.65 (the entire sum due under the AmCap loan), and the transaction was consummated on December 28, 2007 (CR 104-105).

After BTB's purchase of the AmCap note and lien, BTB cancelled the foreclosure scheduled by AmCap, but when Trigeant failed to cure its default, BTB foreclosed on the Corpus Christi Refinery (CR 104-06). BTB was the only bidder at the foreclosure sale and placed a credit bid of

3

$22,565,193.55, equal to all amounts due and owing under the loan at the time (CR 106). For the next six years, BTB operated the Corpus Christi Refinery (RR 58 [06-30-15]).

In 2009, PDVSA Petroleo S.A. ("PDVSA"), a creditor of Trigeant, brought an action in U.S. District Court under the Texas Uniform Fraudulent Transfer Act ("TUFTA") attempting to set aside the foreclosure and subordinate BTB's debt and lien to PDVSA's judgment lien (CR 99; RR 58 [06-30-15]). The federal court ultimately found that BTB's foreclosure on the Corpus Christi Refinery was a fraudulent transfer by Trigeant (CR 118). As a result, in January 2013, the federal court set aside the foreclosure sale, reinstated (and refused to subordinate) BTB's valid note and lien on the refinery, and returned ownership of the Corpus Christi Refinery to Trigeant (RR 59 [06-30-15]).

Thereafter, Trigeant filed for bankruptcy in Florida and ultimately sold the Corpus Christi Refinery to Gravity Midstream Corpus Christi, LLC pursuant to a plan of reorganization confirmed by Judge Kimball of the Bankruptcy Court for the Southern District of Florida (CR 131, 272). Pursuant to that confirmed bankruptcy plan, on June 9, 2015, Trigeant paid

4

BTB's secured claim in full (CR 134). In the orders under review, the district court improperly froze a portion of these proceeds.

## II. AL-SALEH'S FLORIDA JUDGMENT AND TEXAS LAWSUIT.

In 2008, Al-Saleh sued Sargeant, Abu Naba'a, and IOTC USA in state court in Florida for fraud, breach of fiduciary duty, and other torts (CR 8). Al-Saleh alleged that in 2004 he had entered into a business venture with Sargeant and Abu Naba'a to bid for and obtain U.S. government contracts to transport fuel through Jordan to Iraq in aid of the American war effort; he asserted that after winning those contracts with his assistance, Sargeant and Abu Naba'a formed IOTC USA for the purpose of excluding him from the profits of the business venture (CR 43-49). In 2011, Al-Saleh obtained money judgments against these three defendants in that action (CR 8-26).

In 2014, he registered that Florida judgment in the Texas district court below as a Texas court judgment (CR 5-26). He then obtained a charging order in the district court, charging Sargeant's member interest in BTB with the judgment debt (CR 27-33). Subsequently, he filed a petition in this same case against not only the three defendants in the Florida lawsuit but also against BTB and Sargeant Marine Ltd. as well (CR 38-167). That petition sought to enforce the judgment against the original Florida

defendants by means of a turnover order and related procedures (CR 57-60). However, it also asserted an entirely new and independent lawsuit against Sargeant and BTB, seeking to hold BTB liable for the judgment based on theories of alter ego and fraudulent transfer (CR 61-69). The district court signed a temporary restraining order that enjoined BTB from transferring $21.8 million to any third parties (CR 163-65). The court then held a two-day hearing to determine whether to further extend that relief by issuing a temporary injunction (CR 337). In a post-hearing brief, Al-Saleh made clear he was not seeking to enforce his Florida judgment with standard post-judgment remedies, but instead was asking the court to seize funds to aid him in satisfying a future money judgment against BTB: "[A]t this stage of the proceedings," he argued, "a satisfaction of the Florida Judgment this Honorable Court earlier domesticated is not sought but, rather, merely the preservation of the funds necessary for satisfaction" (CR 321). The district court obliged, issuing a temporary injunction that essentially granted Al-Saleh a prejudgment writ of attachment against BTB by enjoining BTB from transferring $21.8 million to any third parties pending a final trial on the merits (CR 337-39).

## Summary of the Argument

"[A] general creditor (one without a judgment) ha[s] no cognizable interest, either at law or in equity, in the property of his debtor, and therefore c[an] not interfere with the debtor's use of that property." *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319-320 (1999). But that is precisely what has occurred in this case.

This appeal arises from Plaintiff Al-Saleh's attempts to enforce an ordinary money judgment that he obtained in a Florida state court against defendants Sargeant, Abu Naba'a, and IOTC USA. Al-Saleh domesticated his money judgment and sought and obtained a charging order – the exclusive remedy by which a judgment creditor of a member may satisfy a judgment out of the judgment debtor's membership interest in a Texas limited liability company – against Sargeant's interest in BTB, a Texas limited liability company. But unsatisfied with that remedy, Al-Saleh then filed the underlying action to attempt to hold BTB directly liable for his money judgment against Sargeant, the judgment debtor, by contending that BTB is the alter ego of Sargeant.

Al-Saleh contended that he was entitled to extraordinary relief in the form of a temporary injunction to prevent non-judgment debtor BTB from

7

"spending, dissipating, depleting, secreting or otherwise moving, transferring or burdening" certain settlement proceeds that BTB was about to receive. In granting Al-Saleh's application for temporary injunction and freezing approximately $22 million of BTB's money, the district court abused its discretion.

With only two exceptions, neither of which is applicable here, the law unambiguously provides that a court lacks authority to enter a pre-judgment "asset-freezing" injunction in an action for money judgment. The only relevant facts are that (i) Al-Saleh does not have a judgment against BTB, (ii) Al-Saleh seeks only monetary relief against BTB, and (iii) Al-Saleh does not have a lien or equitable interest in the settlement proceeds frozen by the district court. By granting such injunctive relief, the district court in effect granted Al-Saleh a pre-judgment writ of attachment that he did not seek and to which he would not have been entitled.

Accordingly, the district court's temporary injunction was a clear abuse of discretion and should be reversed and vacated.

## Argument

### I.    BURDEN OF PROOF AND STANDARD OF REVIEW.

A temporary injunction is an extraordinary remedy that may only be issued to preserve the status quo of the litigation's *subject matter* pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). To obtain a preliminary injunction, the applicant must plead and adduce evidence that, under applicable rules of law, establish (1) a cause of action against the defendant; (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury in the interim. *Id.*

While this court reviews a district court's issuance of a temporary injunction under an abuse of discretion standard, a district court abuses its discretion when it misinterprets or misapplies the law to the established facts. *City of Lubbock v. Coyote Lake Ranch, LLC*, 440 S.W.3d 267, 271 (Tex. App.—Amarillo 2014, pet. filed) (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)). All determinations on questions of law made by the district court in support of the order granting the temporary injunction are reviewed de novo. *Marketshare Telecom, L.L.C. v. Ericsson, Inc.*, 198 S.W.3d 908, 916 (Tex. App.—Dallas 2006, no pet.) (citing *Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877, 883 (Tex. App.—Dallas 2003, no pet.)).

## II. PLAINTIFF WAS NOT ENTITLED TO A PRE-JUDGMENT ASSET-FREEZING INJUNCTION.

Deeply rooted in traditional principles of due process and a long line of legal precedent dating back to the English Court of Chancery is the irrefutable rule of law applicable to this appeal: that a plaintiff is not entitled to a preliminary injunction to preserve assets as security for a potential money judgment. *Grupo*, 527 U.S. at 320. Until the plaintiff has obtained a judgment against the defendant, he has "no cognizable interest, either at law or in equity, in the property of his debtor, and therefore [can] not interfere with the debtor's use of that property." *Grupo*, 527 U.S. at 319-320.[1] As Justice Scalia wrote in *Grupo*, "there is absolutely nothing new about debtors trying to avoid paying their debts, or seeking to favor some creditors over others—or even about their seeking to achieve these ends through 'sophisticated strategies.'" 527 U.S. at 322. And therefore, even if the creditor can offer evidence that the defendant intends to frustrate any judgment by making it uncollectible, a preliminary injunction freezing the

---

[1] In *Grupo*, a group of investors in the defendant corporation sought a preliminary injunction to protect their ability to recover breach of contract damages upon the allegation that the corporation "is at risk of insolvency, if not insolvent already and was dissipating its most significant asset." 527 U.S. at 312. The district court granted the injunction and the court of appeals affirmed. The Supreme Court, however, reversed.

10

defendant's assets is not a proper remedy. 527 U.S. at 322. Were it otherwise:

> [e]very suitor who resorts to chancery for any sort of relief by injunction may, on a mere statement of belief that the defendant can easily make away with or transport his money or goods, impose an injunction on him, indefinite in duration, disabling him to use so much of his funds or property as the court deems necessary for security or compliance with its possible decree. And, if so, it is difficult to see why a plaintiff in any action for a personal judgment in tort or contract may not, also, apply to the chancellor for a so-called injunction sequestrating his opponent's assets pending recovery and satisfaction of a judgment in such a law action. No relief of this character has been thought justified in the long history of equity jurisprudence.

*Grupo*, 527 U.S. at 327 (quoting *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 222-23 (1945)).

Although the Supreme Court's holding in *Grupo* on the jurisdiction of the federal district courts does not control a Texas district court's authority to issue injunctions to preserve the status quo of the subject matter of the litigation, *Grupo's* analysis is persuasive and consistent with Texas law. *See Frederick Leyland & Co. v. Webster Bros. & Co.*, 283 S.W. 332, 335 (Tex. Civ. App.—Dallas 1926, writ dism'd w.o.j.) ("it is contrary to the policy of the law to permit a creditor who has no judgment to go to a court in equity and restrain a debtor from selling, removing, or disposing of his property at his

11

pleasure, pending a common law action"); *see also Reyes v. Burrus*, 411 S.W.3d 921, 924-25 (Tex. App.—El Paso 2013, pet. denied); *Nowak v. Los Patios Investors, Ltd.*, 898 S.W.2d 9, 10 (Tex. App.—San Antonio 1995, no writ); *Harper v. Powell*, 821 S.W.2d 456, 457-58 (Tex. App.—Corpus Christi 1992, no writ); *Lane v. Baker*, 601 S.W.2d 143, 145 (Tex. Civ. App.—Austin 1980, no writ) (all involving the reversal of temporary injunctions freezing cash assets that were not the subject matter of the pending suit in aid of a general creditor's claim for money judgment).[2]

The court in *Nowak* explained, as Justice Scalia did in *Grupo*, that, absent limited exceptions, a pre-judgment temporary injunction freezing the defendant's assets at the behest of a general creditor is not a proper exercise of the court's equitable power:

> [i]t is difficult to see why a plaintiff in any action for a personal judgment in tort or contract may not, also, apply to the

---

[2] *See also Behringer Harvard Royal Island, LLC v. Skokos*, No. 05-09-00332-CV, 2009 WL 4756579, at *4 (Tex. App.—Dallas Dec. 14, 2009, no pet.) (holding that district court was without authority – beyond purview of statutes governing pre-judgment writs of attachment – to enter order requiring defendant to deposit $10 million of its funds in court registry to secure payment of a possible future judgment); *Victory Drilling, LLC v. Kaler Energy Corp.*, No. 04-07-00094-CV, 2007 WL 1828015, at *3 (Tex. App.—San Antonio June 27, 2007, no pet.) (holding that temporary injunction could not be used to prohibit defendant from using its assets pending trial under general rule prohibiting the use of an injunction to secure the legal remedy of damages by freezing assets unrelated to the subject matter of the suit and rejecting applicability of any exceptions) (collecting cases).

chancellor for a so-called injunction sequestrating his opponent's assets pending recovery and satisfaction of a judgment in such a law action. No relief of this character has been thought justified in the long history of equity jurisprudence.

898 S.W.2d at 11 (quoting *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 222–23 (1945)).

Al-Saleh seeks a money judgment against BTB. In the Amended Petition, he asks the district court to "enter judgment in favor of Plaintiff and as against . . . BTB Refining, LLC . . . for the damages sought herein . . . in an amount in excess of the minimum jurisdictional limits of this Court" (CR 70).[3] Thus, because Al-Saleh does not have a judgment against BTB,

---

[3] More specifically, in the titled "damages" section of Al-Saleh's Amended Petition, he states:

As a direct and proximate result of Defendants' conduct as described herein, Plaintiff as suffered damages as follows:

a) Actual damages within the jurisdictional limits of the Court including, but not limited to, amounts due under the contract at issue;
b) General damages;
c) Out-of-pocket damages;
d) Benefit-of-the-bargain damages;
e) Special damages;
f) Incidental and consequential damages;
g) Prejudgment interest as provided by law;
h) Post-judgment interest at the maximum rate provided by law;
i) Costs of Court;
j) Attorneys' fees.

13

the district court's injunction freezing approximately $22 million of BTB's money must be dissolved. Moreover, in a temporary injunction hearing "[T]he ultimate merits of the case are not before the trial court." *Reyes*, 411 S.W.3d at 924-25 (quoting *Reach Grp., L.L.C. v. Angelina Grp.*, 173 S.W.3d 834, 837 (Tex. App.—Houston [14th Dist.] 2005, no pet.)). Al-Saleh does not seek, and the trial court did not grant, an injunction preserving the status quo of the subject matter of the underlying litigation, but rather subjected BTB to a sequestration of its assets pending Al-Saleh's contingent recovery on his underlying claim.

The Supreme Court in *Grupo* and Texas courts have recognized two exceptions to the rule prohibiting pre-judgment asset-freezing injunctions, but neither of them apply to this case.[4]

---

(CR 65). None of these forms of relief are equitable in nature. *See In re Enron Corp. Secs. Litig.*, No. CIV.A. G-02-0084, 2002 WL 1001058, at *3 (S.D. Tex. May 16, 2002) (holding that prayer for relief seeking "a. All actual, consequential, and special damages; b. Prejudgment interest as provided by law; c. Punitive damages as provided by statutory and common law; d. Attorney's fees and legal expenses (including expert fees); e. Post judgment interest; and d. [sic] Costs of court" did not assert any relief that was equitable in nature).

[4] *See, e.g., Nowak*, 898 S.W.2d at 10-11 (recognizing that pre-judgment asset-freezing injunction may be available to preserve collateral securing a note that the plaintiff seeks to collect or to preserve assets or their proceeds that would be subject to a pleaded equitable remedy such as rescission, constructive trust, or restitution); *Victory Drilling*, 2007 WL 1828015, at *3 (recognizing exceptions to general rule prohibiting pre-judgment asset-freezing injunction where party seeks injunction to preserve assets or

14

## A. Al-Saleh Has Made No Claim for Equitable Relief.

The first exception applies to suits in which the temporary injunction applicant seeks equitable relief in the underlying lawsuit, such as a claim for rescission, constructive trust, or restitution. Al-Saleh seeks a money judgment against BTB, either as an alleged recipient of fraudulent transfers or as the alleged alter ego of Sargeant (CR 56-61). He does not assert any independent claim against BTB for equitable relief.

In *Grupo*, the Supreme Court distinguished its earlier decision in *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 290 (1940), where it held that a preliminary injunction restraining the defendants in a securities fraud suit from transferring any assets "was a reasonable measure to preserve the status quo" pending final trial. The Court explained that a suit seeking equitable relief is very different from a suit such as Al-Saleh's to enforce a money judgment against a non-party to the judgment. *Grupo*, 527 U.S. at 325. "The preliminary relief available in a suit seeking equitable

---

that are subject to a pled equitable remedy such as rescission, constructive trust, or restitution, where party seeks injunction to enjoin assets that form basis of underlying suit, *i.e.*, right to the asset is basis of suit and party seeking injunction has a security interest in asset to be enjoined).

relief has nothing to do with the preliminary relief available in a creditor's bill seeking equitable assistance in the collection of a legal debt." *Id.*

In a suit for equitable relief, a preliminary injunction may be available, but not in a mere suit to enforce a money judgment, where any equitable relief requested is merely "incidental to and purely for the purposes of enforcement of the primary relief sought here, a money judgment." *UBS Secs. LLC v. Highland Capital Mgmt., L.P.*, 42 Misc.3d 580, 591 (N.Y. Sup. Ct. 2013) (holding that an alter ego claim on which fraudulent conveyance claims are predicated is brought in order to recover on legal claims for breach of contract and fraudulent inducement could not support grant of preliminary injunction) (quoting *Credit Agricole Indosuez v. Rossiyskiy Kredit Bank*, 729 N.E.2d 683, 687 (N.Y. 2000)); *see also JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366, 389 (S.D.N.Y. 2003) (holding in action to enforce a judgment against a corporate judgment debtor and individual defendants alleged to be its alter ego, claim to set aside fraudulent conveyance made by one of the alleged alter egos did not make preliminary injunction proper as plaintiff's action was primarily for a money judgment and "[t]he equitable relief that the plaintiff seeks, including the setting aside of the alleged fraudulent

16

conveyances, is incidental to, and indeed contingent upon the success of, the plaintiff's alter ego action."); *compare, e.g., Animale Grp. Inc. v. Sunny's Perfume, Inc.*, 256 F. App'x. 707, 708 (5th Cir. 2007) (holding that plaintiffs could obtain preliminary injunction freezing defendants' assets where plaintiffs sought equitable relief of accounting of lost profits); *U.S. ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 497-98 (4th Cir. 1999) (holding that plaintiff could obtain preliminary injunction freezing defendants' assets where plaintiff sought a constructive trust); *Newby v. Enron Corp.*, 188 F. Supp. 2d 684, 702-03 (S.D. Tex. 2002) (holding that *Grupo* did not preclude issuance of a preliminary injunction freezing defendants' assets where plaintiff asserted equitable claims for restitution, constructive trust, accounting and disgorgement of profits). Accordingly, Al-Saleh's alter ego and fraudulent transfer allegations[5] do not transform this action at law for collection of a debt into one in equity.

---

[5] Indeed, Al-Saleh's fraudulent transfer claim is not a stand-alone claim, but rather rises and falls with his alter ego allegations. *See JSC*, 295 F. Supp. 2d at 389; *In re Boyd*, No. ADV 12-05107, 2012 WL 5199141, at *6 (Bankr. W.D. Tex. Oct. 22, 2012) (finding that fraudulent transfer claim depended on whether trustee could pierce the corporate veil between the debtor and defendant); *Zahra Spiritual Trust v. United States*, 910 F.2d 240, 247 (5th Cir. 1990) (recognizing that plaintiff's fraudulent conveyance claim rested on alter ego theory); *In re Rood*, 448 B.R. 149, 162-63 (D. Md. 2011) (recognizing that fraudulent conveyance claim asserted depended on success in proving alter ego); *In re Derivium Capital, LLC*, 396 B.R. 184, 189 (Bankr. D. S.C. 2008) (same).

17

Likewise, evidence offered at a preliminary injunction hearing in support of an unpleaded (and unavailable) equitable claim does not change the fundamental character of the lawsuit as an action at law into an equitable one, as courts have no authority to imply claims not asserted in the plaintiff's petition. *See Forester v. El Paso Elec. Co.*, 329 S.W.3d 832, 836 (Tex. App.—El Paso 2010, mandamus denied) ("Liberal construction [in favor of the pleader] does not mean that we imply claims that are not alleged.").

Al-Saleh spent most of his allotted time during the two-day preliminary injunction hearing offering evidence purporting to "trace" the proceeds of the fuel contracts to BTB's purchase of the AmCap note and lien (RR 37-104 [06-26-15], RR 228-263 [06-30-15]). Tracing to an identifiable res is a requirement for a constructive trust in Texas. *See Hahn v. Love*, 321 S.W.3d 517, 533 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). But Al-Saleh has not pleaded a claim for the imposition of a constructive trust in this case. Nor is this remedy available to Al-Saleh in this action. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 87–88 (Tex. 2015) ("A constructive trust is not merely a vehicle for collecting assets as a form of damages."). And, in any event, Al-Saleh did not plead an independent claim against BTB for

18

which a constructive trust over BTB's assets is an appropriate remedy. *Id.* (explaining that constructive trust is not a claim but a remedy requiring a claim for breach of a special trust or fiduciary relationship or actual or constructive fraud).[6] Indeed, he concedes that he cannot maintain any such claim against BTB in this action.[7]

## B. Al-Saleh Has No Lien Upon, or Equitable Interest In, BTB's Assets.

The second exception to the general rule against asset-freezing injunctions is when the plaintiff has a lien upon, or asserts an equitable interest in, the assets sought to be frozen. *Grupo*, 527 U.S. at 325-26. Al-Saleh does not have a lien in the approximately $22 million belonging to BTB that the district court froze. "A creditor acquires a lien upon the lands

---

[6] A constructive trust can only be imposed on assets of the judgment debtor, wherever those assets may presently be, including in the hands of third-parties. *Hahn*, 321 S.W.3d at 533. As the Texas Supreme Court recently stated, "Definitive, designated property, wrongfully withheld from another, is the very heart and soul of the constructive trust theory." *KCM Fin. LLC*, 457 S.W.3d at 88 (quoting *Wheeler v. Blacklands Prod. Credit Ass'n*, 627 S.W.2d 846, 851 (Tex. App.–Fort Worth 1982, no writ)). But a member of a limited liability company does not have an interest in any specific property owned by the company, and, therefore, a constructive trust would not even achieve Al-Saleh's objective. *Enzo Invs., LP v. White*, --- S.W.3d ----, 2015 WL 3524461, at *10 (Tex. App.— Houston [14th Dist.] June 4, 2014, pet. filed) (explaining that plaintiff could not obtain a constructive trust over assets of debtor purportedly held by limited liability company as a member in a limited liability company has no interest in any specific asset of the company).

[7] In the Florida Action, Al-Saleh's counsel represented that "we have claims here [in Florida] that we don't have in Texas, and those claims can only be adjudicated here, the constructive trust claim . . . ." (CR 184).

19

of his debtor by a judgment; and upon the personal goods of the debtor, by the delivery of an execution to the sheriff. It is only by these liens that a creditor has any vested or specific right in the property of his debtor." *Id.* at 323 n.6. Al-Saleh has no judgment against BTB and has not obtained either a pre-judgment writ of attachment or garnishment against BTB.[8]

Neither does Al-Saleh have any equitable interest in the approximately $22 million. "A debt claim leads only to a money judgment and does not in its own right constitute an interest in specific property." *Rahman*, 198 F.3d at 496. By contrast, a plaintiff asserts an equitable interest in specific property when he asserts a claim to specific property, such as by way of a claim supporting the imposition of a constructive trust. As the court explained in *Rahman*:

> when the plaintiff creditor asserts a cognizable claim to specific assets, a court may in the interim invoke equity to preserve the *status quo* pending judgment where . . . the preliminary relief furthers the court's ability to grant the final relief requested. The nexus between the assets sought to be frozen through an interim order and the ultimate relief requested in the lawsuit is essential to the authority of a . . . court in equity to enter a preliminary injunction freezing assets.

---

[8] As discussed below, those pre-judgment remedies are likewise unavailable to Al-Saleh under Texas law. *See supra* III.A.

20

198 F.3d at 496-97; *see also Netsphere, Inc. v. Baron*, 703 F.3d 296, 309 (5th Cir. 2012) ("[A] court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment.").

Here, there is no connection between the approximately $22 million in settlement proceeds that the district court froze and the money damages that Al-Saleh seeks. Money is fungible. Al-Saleh's Florida money judgment is for an undifferentiated sum of money, and does not apply to, or create an interest in, any specific fund or res. In this debt collection action, absent a proper prejudgment writ of attachment (to which Al-Saleh is not entitled and which he does not seek), the district court has no authority to order that BTB pay any money judgment that Al-Saleh may obtain out of specific funds.[9] *See Dittmann v. D.B. Zwirn & Co.*, No. CIV.A. H-09-402, 2009 WL 411562, at *5 (S.D. Tex. Feb. 13, 2009) (denying request for preliminary injunction where the plaintiff requested temporary injunctive relief "in an effort to preserve [the defendant's] financial status

---

[9] A prejudgment writ of attachment enables the plaintiff to seize the defendant's assets and hold it so that if the plaintiff obtains a judgment, the seized property will be forthcoming to satisfy the judgment. *Gulf Oil Co. U.S. v. First Nat'l Bank of Hereford*, 503 S.W.2d 300, 304-05 (Tex. Civ. App. — Amarillo 1973, no writ).

quo so that [the defendant] has the resources with which to pay [the plaintiff] a damages award . . . should his case ultimately be successful.").[10]

## III. THE DISTRICT COURT'S PRE-JUDGMENT INJUNCTION IS AN IMPROPER PRE-JUDGMENT ATTACHMENT.

### A. The District Court's Temporary Injunction Improperly Granted Al-Saleh A Pre-Judgment Remedy To Which He Was Not Entitled.

While the unavailability of a pre-judgment asset-freezing injunction does not preclude the possibility of other pre-judgment remedies (such as the statutorily recognized "extraordinary remedies of" attachment and garnishment), a pre-judgment injunction may not be issued in the guise of such remedies. As the court succinctly stated in *Alliance Royalties, LLC v. Boothe*, "If a plaintiff wants to protect its right to collect a potential judgment, it must follow the specific statutes designed for that purpose." 313 S.W.3d 493, 497 (Tex. App.—Dallas 2010, no pet.) (holding that temporary injunction cannot be used to effect the equivalent of prejudgment attachment, garnishment, or receivership and bypass the statutory requirements for such relief).

---

[10] *See also, e.g., Netsphere*, 703 F.3d at 309 ("[A] court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment.").

This Court has likewise held that when a plaintiff seeks only monetary relief and title to the defendant's property or its sale proceeds is not the subject matter of the plaintiff's underlying suit,

> an attempt to secure the [unrelated] funds to satisfy plaintiff's future judgment for money damages through injunction puts the cart before the horse. [P]laintiff needs to have a judgment first. We find no rule in law or equity that authorizes courts to issue writs of injunction against defendants restraining them from disposing of their property upon which a plaintiff has no form of lien, pending litigation. [P]laintiff's attempted relief is more in the nature of an attachment without bond.

*Harper*, 821 S.W.2d at 457.

Here, not only has Al-Saleh failed to request a pre-judgment writ of attachment under Texas law, but Texas law is clear that he cannot satisfy the requirements for such relief. Thus, the district court's temporary injunction is an improper pre-judgment writ of attachment.

Under Texas law, a pre-judgment writ of attachment is regarded as a "harsh, oppressive remedy," and therefore, "attachment is not available unless statutory safeguards are strictly observed." *S.R.S. World Wheels, Inc. v. Enlow*, 946 S.W.2d 574, 575 (Tex. App.—Fort Worth 1997, no writ). The statutory requirements for issuance of a pre-judgment writ of attachment are: (1) the defendant is justly indebted to the plaintiff; (2) the attachment is

23

not sought for the purpose of injuring or harassing the defendant; (3) the plaintiff will probably lose his debt unless the writ of attachment is issued; and (4) specific grounds for the writ exist under § 61.002 of the Texas Civil Practice and Remedies Code. *Id*; TEX. CIV. PRAC. & REM. CODE § 61.001. Al-Saleh has not – and cannot – satisfy the first statutory requirement.

The first requirement of a "just debt" is not satisfied where the plaintiff alleges damages arising in tort or asserts a claim for unliquidated damages.[11],[12] *S.R.S. World Wheels*, 946 S.W.2d at 575. Here, as an initial matter, the only true cause of action or claim that Al-Saleh has asserted against BTB is an action on foreign judgments. Alter ego is not a separate cause of action. *See Campbell v. Adventist Health Sys./Sunbelt, Inc.*, 946 S.W.2d 617, 626-27 (Tex. App.—Fort Worth 1997, no writ) ("[Alter ego] is a theory of law that, when supported by proven facts, enables a successful plaintiff to have adjudication that the alter ego corporation is liable for damages assessed against the corporation that is sued in the underlying

---

[11] A "debt" is defined as "an obligation to pay a liquidated sum on an express or implied contract." *In re Argyll Equities, LLC*, 227 S.W.3d 268, 271 (Tex. App.—San Antonio 2007, no pet.).

[12] Texas Civil Practice & Remedies Code § 61.005 creates an exception for suits grounded in tort or on an unliquidated demand, but only where the plaintiff cannot obtain personal service on the defendant in Texas. That, of course, is not the case here.

cause. In other words, a theory of alter ego is merely a means of increasing the number of entities that may become liable when and if a judgment is obtained in an underlying cause of action."). And as previously explained, Al-Saleh's fraudulent conveyance claim is asserted in the same vein as his alter ego theory. *See supra* II.A.

In any event, a fraudulent conveyance claim and an alter ego theory do not meet the statutory requirement of a "just debt." A claim for damages pursuant to either is grounded in tort, contingent, and unliquidated. *See In re Radiant Darkstar Prods., LLC*, No. 05-13-00586-CV, 2013 WL 3718065, at *2 (Tex. App.—Dallas July 12, 2013, mandamus denied) (holding that writ of garnishment was not available for tort of fraudulent transfer or on a theory of piercing the corporate veil); *In re Tex. Am. Express, Inc.*, 190 S.W.3d 720, 726 (Tex. App.—Dallas 2005, no pet.) (holding that writ of attachment was not available for tort of fraudulent transfer or on an alter ego theory); *see also F.D.I.C. v. Gold Park Dev.*, No. CIV.A. 6:00-MC-24, 2008 WL 2325625, at *2 (E.D. Tex. June 3, 2008) (holding that prejudgment writ of garnishment entered against alleged alter ego

25

prior to determination of alter ego was a violation of defendant's due process rights as alter ego determination was a contingent claim).[13]

In *In re Texas American Express, Inc.*, for example, the Dallas Court of Appeals rejected the plaintiff's attempt to obtain a prejudgment writ of garnishment on facts similar to those presented here. There, the plaintiff obtained a judgment for $371,919.92 against a trucking company and its driver who had caused his injuries. The plaintiff later filed suit against the trucking company, a third-party, and the third-party's officer, alleging that the trucking company transferred its assets to the non-judgment debtor defendants to prevent the plaintiff from collecting on his judgment. On that basis, the plaintiff sought to impose liability for the judgment on the other defendants, alleging that the other defendants were the alter ego of the judgment debtor trucking company. And further, the plaintiff sought a

---

[13] A writ of garnishment and a writ of attachment are extraordinary remedies that differ only in the party to which they are directed. Whereas a writ of attachment is directed to the defendant's assets that are within the state and subject to execution, a writ of garnishment is directed to the defendant's assets that are in the hands of a third-party or otherwise not subject to execution. *See Hanson v. Guardian Trust Co.*, 150 S.W.2d 465, 467 (Tex. App.—Galveston 1941, pet. dism'd). Indeed, a writ of garnishment is commonly referred to as "a species of attachment" and requires that an original attachment have been properly issued. *Buerger v. Wells*, 222 S.W. 151, (Tex. 1920); TEX. CIV. PRAC. & REM. CODE § 63.001. Accordingly, writ of garnishment cases are not merely analogous, but directly on point.

prejudgment writ of garnishment of the non-judgment debtors' bank account up to the amount of the judgment.

After recognizing that the fraudulent transfer of assets is a tort and that the alter ego doctrine is not a substantive cause of action, but rather, a purely remedial remedy that "expands the scope of potential sources of relief by extending to individual shareholders or other business entities what is otherwise only a corporate liability," the court determined that the plaintiff's lawsuit was one for tort damages, which are contingent and unliquidated, and the issue of whether the non-judgment debtors were alter egos of the judgment debtor was a contingent claim that must be determined by the fact finder. 190 S.W.3d at 726. And therefore, the plaintiff was not entitled to a pre-judgment writ of garnishment. *Id.*

Significantly, the court also rejected the plaintiff's contention that because he was simply trying to collect on his judgment, the "debt" is liquidated in the amount of the judgment. *Id.* The court explained, "at this preliminary stage, the judgment is not a 'debt' of [the non-judgment debtor defendants]. [Plaintiff]'s claims against them are contingent and unliquidated," and the statute applies only when the plaintiff is suing for a "debt." *Id.*

27

As in *In re Texas American Express*, while Al-Saleh has a "debt" against Sargeant by virtue of the Florida judgment, he does not have a "debt" against BTB. Until the fact-finder has resolved Al-Saleh's allegations that BTB is Sargeant's alter ego, his claims against BTB are contingent and unliquidated. Accordingly, Al-Saleh is not entitled to a pre-judgment writ of attachment, and the district court therefore erred in granting him one in the guise of a preliminary injunction.

**B.    BTB Does Not Have An Adequate Remedy At Law To Obtain Relief From the District Court's Improper Pre-Judgment Attachment Of Its Money.**

When viewed in its proper light – as an improper pre-judgment attachment rather than a temporary injunction as styled by Al-Saleh and the district court – it becomes apparent that BTB does not have an adequate remedy at law by appeal. In *In re Argyll Equities*, the court held that a "heavy-handed" writ of attachment freezing the defendant's assets, which it needed to meet its operating costs, left the defendant without an adequate remedy at law, and therefore, a writ of mandamus was appropriate. 227 S.W.3d at 273; *S.R.S. World Wheels*, 946 S.W.2d at 575 (holding mandamus relief is appropriate to challenge an improperly obtained writ of attachment because the relator had no adequate remedy at

law to re-obtain possession of its property). Here, although the district court's order purports to be a temporary injunction, as previously demonstrated, it is actually an improper pre-judgment attachment of a significant amount of BTB's cash assets – approximately $22 million to be precise – which BTB needs to meet its outstanding obligations and ongoing – albeit reduced – costs of operation. *See supra* III. Accordingly, the remedy by appeal afforded by Texas Civil Practice and Remedies Code § 51.014(a)(4) is inadequate.[14]

BTB has therefore filed a petition for writ of mandamus contemporaneously with its appellate brief and respectfully requests that this interlocutory appeal be treated as an original proceeding for writ of mandamus, and that the Court act thereon and issue an order directing the 319th Judicial District Court, Nueces County, to vacate its July 2, 2015 "Order On Temporary Injunction."

---

[14] Texas Civil Practice and Remedies Code § 51.014(a)(4) provides that "[a] person may appeal from an interlocutory order of a district court, county court at law, statutory probate court, or county court that . . . (4) grants or refuses a temporary injunction or grants or overrules a motion to dissolve a temporary injunction as provided by Chapter 65."

## IV. As Concerning BTB, Al-Saleh Has Already Obtained His Adequate Remedy at Law.

Al-Saleh has brought this suit against BTB for the sole reason that he has been unable to collect on his judgment against Sargeant (CR 39-40).[15] But his dispute with Sargeant has nothing to do with BTB. As a member of BTB, a limited liability company, Sargeant does not have an interest in any specific property owned by BTB. *Enzo Invs.*, 2015 WL 3524461, at *10. Consequently, Al-Saleh's exclusive remedy against Sargeant with respect to BTB is a charging order, which grants Al-Saleh a lien in any distributions by BTB to Sargeant. TEX. BUS. ORG. CODE § 101.112(b) (judgment creditor with charging order has "only the right to receive any distribution to which the judgment creditor would otherwise be entitled in respect of the membership interest").

Under Texas Business Organizations Code § 101.112, a charging order is the exclusive remedy against an LLC member's interest. Specifically, the statute provides, "The entry of a charging order is the **exclusive remedy** by which a judgment creditor of a member or of any

---

[15] Al-Saleh alleges, "Defendant Sargeant has consciously refused and systematically avoided satisfying the foregoing Judgments against him notwithstanding his obvious ability to satisfy such Judgments . . . to the extreme detriment of the Plaintiff."

30

other owner of a membership interest may satisfy a judgment out of the judgment debtor's membership interest." TEX. BUS. ORG. CODE § 101.112(d) (emphasis added). Al-Saleh has already obtained that relief (CR 31-33).

## Prayer

This court should vacate the trial court's temporary injunction in its entirety, as to both Sargeant and BTB (and its agents, officers, members, etc.), and grant such additional relief to which BTB may be entitled.

Respectfully submitted,

*/s/ Mark T. Mitchell*
Mark T. Mitchell
Texas Bar No. 14217700
Gardere Wynne Sewell LLP
600 Congress Avenue, Suite 3000
Austin, Texas 78701
Tel:  512.542.7072
Fax:  512.542.7272

Deirdre B. Ruckman
Texas Bar No. 21196500
Stacy R. Obenhaus
Texas Bar No. 15161570
Debbie E. Green
Texas Bar No. 24059852
Gardere Wynne Sewell LLP
3000 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
Tel:  214.999.4250
Fax:  214.999.3250

ATTORNEYS FOR APPELLANT BTB REFINING, LLC

32

## Certificate of Compliance

I certify that this document contains **5,763** words, apart from those parts excluded by Texas Rule of Appellate Procedure 9.4(i)(1).

*/s/ Debbie E. Green*
Debbie E. Green

## Certificate of Service

I certify that this document was filed on August 31, 2015, pursuant to the electronic filing requirements of the Thirteenth Court of Appeals, which provide for service on counsel of record below in accordance with the electronic filing protocols in place:

Daniel D. Pipitone
Kenneth W. Bullock, II
Sameer S. Karim
Munsch Hardt Kopf & Harr PC
Pennzoil Place
700 Milam, Suite 2700
Houston, Texas 77002
dpipitone@munsch.com
kbullock@munsch.com
skarim@munsch.com

*/s/ Debbie E. Green*
Debbie E. Green

# Appendix A

Al-Saleh's Judgments

(Sept. 19, 2011; Feb. 9, 2012; and Sept. 16, 2013)

(CR 8-26)

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT IN AND FOR PALM BEACH COUNTY, FLORIDA

MOHAMMAD ANWAR FARID AL-SALEH,

    Plaintiff,

v.

HARRY SARGEANT, III,
MUSTAFA ABU-NABA'A, and
INTERNATIONAL OIL TRADING
COMPANY, LLC, a Florida corporation.

    Defendants.

CASE NO.50 2008 CA 010187 XXXX MB AJ



## FINAL JUDGMENT ON THE VERDICT

WHEREAS, in the above-captioned case (Case No. 50 2008 CA 010187 XXXX MB AJ), Plaintiff Mohammad Anwar Farid Al-Saleh filed a complaint on April 10, 2008, against Defendants Harry Sargeant, III, Mustafa Abu-Naba'a and International Oil Trading Company, LLC ("IOTC USA") asserting claims for common law fraud, conspiracy to commit fraud, aiding and abetting fraud, breach of fiduciary obligations under Jordanian law, tortious injury under Jordanian law, and breach of the Unfair Competition and Trade Secrets Law Number 15 of the Year 2000 under Jordanian law;

WHEREAS, the above-captioned action came to trial before this Court on July 11, 2011, to determine whether Defendants Sargeant, Abu-Naba'a and IOTC USA were liable for money damages to Plaintiff Al-Saleh;

WHEREAS, upon a jury trial, the jury found in favor of Plaintiff Al-Saleh on Plaintiff's claim of common law fraud;



EXHIBIT
A

CFN 20110365313, OR BK 24772 PG 377,RECORDED 09/30/2011 11:43:16  8
Sharon R. Bock,CLERK & COMPTROLLER, Palm Beach County, NUM OF PAGES 4

WHEREAS, upon a jury trial, the jury found in favor of Plaintiff Al-Saleh on Plaintiff's claim of conspiracy to commit fraud;

WHEREAS, upon a jury trial, the jury found in favor of Plaintiff Al-Saleh on Plaintiff's claim of aiding and abetting fraud;

WHEREAS, upon a jury trial, the jury found in favor of Plaintiff Al-Saleh on Plaintiff's claim of breach of fiduciary obligations under Jordanian law;

WHEREAS, upon a jury trial, the jury found in favor of Plaintiff Al-Saleh on Plaintiff's claim of tortious injury under Jordanian law;

WHEREAS, upon a jury trial, the jury found in favor of Plaintiff Al-Saleh on Plaintiff's claim of breach of the Unfair Competition and Trade Secrets Law Number 15 of the Year 2000 under Jordanian law;

WHEREAS, the jury awarded Plaintiff Al-Saleh damages in the amount of $28,800,000.00 for all claims;

ORDERED AND ADJUDGED AS FOLLOWS:

A. Plaintiff does and recovers from the Defendants, jointly and severally, judgment in the amount of $28,800,000.00, together with post-judgment interest at six percent (6%), *nunc pro tunc* to July 27, 2011, for all of which let execution issue.

B. The names and addresses of the parties are:

a. Plaintiff:    Mohammad Anwar Farid Al-Saleh
c/o Louis M. Silber, Esquire
Silber Valente & Davis
1806 Old Okeechobee Road
West Palm Beach, Florida 33409

b. Defendants:

Harry Sargeant, III
420 North Ocean Boulevard

CFN 20170050013 BOOK 29772 PAGE 578, 2 OF 4

Delray Beach, FL 33483-7363

c. Mustafa Abu-Naba'a
2951 S. Bayshore Drive, #1014
Coconut Grove, FL 33133-6002

d. International Oil Trading Company, LLC
1 North Federal Highway, Suite 500
Boca Raton, Florida 33432

C. The judgment debtors shall complete under oath Florida Rule of Civil Procedure Form 1.977 (Fact Information Sheet), including all required attachments, and serve it on the judgment creditor's attorney, or the judgment creditor if the judgment creditor is not represented by an attorney, within 45 days from the date of this final judgment, unless the final judgment is satisfied or post-judgment discovery is stayed. The fact information sheet need not be recorded in the public records.

D. Jurisdiction of this case is retained to enter further orders that are proper to compel the judgment debtors to complete form 1.977, including all required attachments, and serve it on the judgment creditor's attorney, or the judgment creditor if the judgment creditor is not represented by an attorney.

E. The Court denies an award of pre-judgment interest because Plaintiff's loss cannot be "fixed as of a definite time." *See* Bosem v. Musa Holdings, Inc., 46 So.2d 42,46 (Fla. 2010) The Court reserves jurisdiction awarding attorneys' fees, if any, and taxable costs.

The Clerk of the Court is directed to enter this judgment.

Dated this 19ᵗʰ day of September, 2011.

HONORABLE ROBIN L. ROSENBERG

Copies provided:

Louis M. Silber, Esq. and Allison J. Davis, Esq., 1806 Old Okeechobee Road, West Palm Beach, FL 33409

Barry Ostrager and Rachel S. Weiss, Simpson Thacher & Bartlett, 425 Lexington Avenue, New York, NY 10017

Michael D. Kibler and Jonathan M. Weiss, Simpson Thacher & Bartlett, 1999 Avenue of the Stars, 29th Floor, Los Angeles, CA 90067

Roger S. Kobert, Esq., and Marc C. Pugliese, Esq., Rafferty Kobert, Tenenholtz, Bounds & Hess, P.A., 1401 Brickell Avenue, Suite #825, Miami, FL 33131

4

I hereby certify that the foregoing is a true copy of the record in my office this day, Nov 12, 2014.
Sharon R. Bock , Clerk Circuit Court, Palm Beach County, Florida
BY _____ Deputy Clerk          11

CFN 20110288123 OR BK 27725 PG 0004 - 07 (4pgs)
RECORDED 10/14/2011 15:13:29
HARVEY RUVIN, CLERK OF COURT, MIAMI-DADE COUNTY, FLORIDA

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

MOHAMMAD ANWAR FARID
AL-SALEH,

    Plaintiff,

v.

HARRY SARGEANT, III,
MUSTAFA ABU-NABA'A, and
INTERNATIONAL OIL TRADING
COMPANY, LLC, a Florida corporation.

    Defendants.

CASE NO. 50 2008 CA 010187 XXXX MB AJ

## FINAL JUDGMENT ON THE VERDICT

WHEREAS, in the above-captioned case (Case No. 50 2008 CA 010187 XXXX MB AJ),
Plaintiff Mohammed Anwar Farid Al-Saleh filed a complaint on April 10, 2008, against
Defendants Harry Sargeant, III, Mustafa Abu-Naba'a and International Oil Trading Company,
LLC ("IOTC USA") asserting claims for common law fraud, conspiracy to commit fraud, aiding
and abetting fraud, breach of fiduciary obligations under Jordanian law, tortious injury under
Jordanian law, and breach of the Unfair Competition and Trade Secrets Law Number 15 of the
Year 2000 under Jordanian law;

WHEREAS, the above-captioned action came to trial before this Court on July 11, 2011,
to determine whether Defendants Sargeant, Abu-Naba'a and IOTC USA were liable for money
damages to Plaintiff Al-Saleh;

WHEREAS, upon a jury trial, the jury found in favor of Plaintiff Al-Saleh on Plaintiff's
claim of common law fraud;



CFN 20110365913, OR BK 24772 PG 377, RECORDED 09/30/2011 11:48:16
Sharon R. Bock, CLERK & COMPTROLLER, Palm Beach County, NUM OF PAGES 4

WHEREAS, upon a jury trial, the jury found in favor of Plaintiff Al-Saleh on Plaintiff's claim of conspiracy to commit fraud;

WHEREAS, upon a jury trial, the jury found in favor of Plaintiff Al-Saleh on Plaintiff's claim of aiding and abetting fraud;

WHEREAS, upon a jury trial, the jury found in favor of Plaintiff Al-Saleh on Plaintiff's claim of breach of fiduciary obligations under Jordanian law;

WHEREAS, upon a jury trial, the jury found in favor of Plaintiff Al-Saleh on Plaintiff's claim of tortious injury under Jordanian law;

WHEREAS, upon a jury trial, the jury found in favor of Plaintiff Al-Saleh on Plaintiff's claim of breach of the Unfair Competition and Trade Secrets Law Number 15 of the Year 2000 under Jordanian law;

WHEREAS, the jury awarded Plaintiff Al-Saleh damages in the amount of $28,800,000.00 for all claims;

ORDERED AND ADJUDGED AS FOLLOWS:

A. Plaintiff does and recovers from the Defendants, jointly and severally, judgment in the amount of $28,800,000.00, together with post-judgment interest at six percent (6%), nunc pro tunc to July 27, 2011, for all of which let execution issue.

B. The names and addresses of the parties are:

a. Plaintiff: Mohammad Anwar Farid Al-Saleh
     c/o Louis M. Silber, Esquire
     Silber Valente & Davis
     1800 Old Okeechobee Road
     West Palm Beach, Florida 33409

b. Defendants:

 Harry Sargeant, III
 420 North Ocean Boulevard

2

13

Delray Beach, FL 33483-7363

c. Mustafa Abu-Naba'a
2931 S. Bayshore Drive, #1014
Coconut Grove, FL 33133-6002

d. International Oil Trading Company, LLC
1 North Federal Highway, Suite 300
Boca Raton, Florida 33432

C. The judgment debtors shall complete under oath Florida Rule of Civil Procedure Form 1.977 (Fact Information Sheet), including all required attachments, and serve it on the judgment creditor's attorney, or the judgment creditor if the judgment creditor is not represented by an attorney, within 45 days from the date of this final judgment, unless the final judgment is satisfied or post-judgment discovery is stayed. The fact information sheet need not be recorded in the public records.

D. Jurisdiction of this case is retained to enter further orders that are proper to compel the judgment debtors to complete form 1.977, including all required attachments, and serve it on the judgment creditor's attorney, or the judgment creditor if the judgment creditor is not represented by an attorney.

E. The Court denies an award of pre-judgment interest because Plaintiff's loss amount be "fixed as of a definite time." See Boardman v. Munn Holdings, Inc., 46 So.2d 42,46 (Fla. 2010) The Court reserves jurisdiction awarding attorneys' fees, if any, and taxable costs.

3

The Clerk of the Court is directed to enter this Judgment.

Dated this ___ day of September, 2011.

_____
HONORABLE ROBIN L. ROSENBERG

Copies provided:

Louis M. Silber, Esq. and Allison J. Davis, Esq., 1806 Old Okeechobee Road, West Palm Beach, FL 33409

Barry Ostrager and Rachel S. Weiss, Simpson Thacher & Bartlett, 425 Lexington Avenue, New York, NY 10017

Michael D. Kibler and Jonathan M. Weiss, Simpson Thacher & Bartlett, 1999 Avenue of the Stars, 29th Floor, Los Angeles, CA 90067

Roger B. Kobert, Esq., and Marc C. Pugliese, Esq., Rafferty Kobert, Tenenholtz, Bounds & Hass, P.A., 1401 Brickell Avenue, Suite 825, Miami, FL 33131



I hereby certify that the foregoing is a true copy of the record in my office this day, Oct 03, 2011. Sharon R. Bock, Clerk Circuit Court, Palm Beach County, Florida
BY _____ Deputy Clerk

IN THE CIRCUIT COURT OF THE 15TH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO. 50 2008 CA 010187 XXXX MB AJ

MOHAMMAD ANWAR FARID AL-SALEH

      Plaintiff,

vs.

HARRY SARGEANT, III,
MUSTAFA ABU-NABA'A, and
INTERNATIONAL OIL TRADING
COMPANY, LLC, a Florida corporation,

      Defendants.

_____/



### FINAL COST JUDGMENT FOR PLAINTIFF

This matter came before the court upon the Plaintiff's Motion to Tax Costs filed August 8, 2011. After a hearing on notice, the court entered its Order Granting Plaintiff's Motion to Tax Costs dated February 2, 2012. Accordingly, it is:

ADJUDGED that the Plaintiff, MOHAMMAD ANWAR FARID AL-SALEH, have and recover of the Defendants, HARRY SARGEANT, III, MUSTAFA ABU-NABA'A, and INTERNATIONAL OIL TRADING COMPANY, LLC, a Florida corporation, taxable costs in this action in the total amount of **EIGHTY-FIVE THOUSAND FOUR HUNDRED EIGHTY-NINE DOLLARS AND NINETY-SEVEN CENTS ($85,489.97)**, for all of which let execution issue forthwith. This judgment shall bear interest at the rate of 4.75 percent per annum until paid.

The names, addresses of the parties are:

Plaintiff:
MOHAMMAD ANWAR FARID AL-SALEH
c/o Louis M. Silber, Esq.
SILBER & DAVIS
1806 Old Okeechobee Road
West Palm Beach, Florida 33409

Defendant:
HARRY SARGEANT, III
Social Security Number: REDACTED

1420 North Ocean Boulevard
Delray Beach, FL 33483-7363

Defendant:
MUSTAFA ABU-NABA'A
Social Security Number: UNKNOWN
2951 S. Bayshore Drive, # 1014
Coconut Grove, FL 33133-6002

Defendant:

EXHIBIT
B

International Oil Trading Co., LLC                Boca Raton, FL 33432
1 North Federal Highway, Suite 500

The Judgment Debtors shall complete under oath the Florida Rule of Civil Procedure Form 1.977 (Fact Information Sheet), including all required attachments, and serve it on the judgment creditor's attorney, or the judgment creditor if the judgment creditor is not represented by an attorney, within 45 days from the date of this final judgment, unless the final judgment is satisfied or post-judgment discovery is stayed. The fact information sheet need not be recorded in the public records.

Jurisdiction of this case is retained to enter further orders that are proper to compel the judgment debtors to complete Form 1.977, including all required attachments, and serve it on the judgment creditor's attorney, or the judgment creditor if the judgment creditor is not represented by an attorney.

DATED this ___ day of February, 2012

THE HONORABLE ROBIN L. ROSENBERG
Circuit Court Judge
Miami, FL 33131

Copies furnished to:

Louis M. Silber and Allison J. Davis          Carlos L. de Zayas
1806 Old Okeechobee Road                       Lydecker | Diaz
West Palm Beach, Florida 33409                 1221 Brickell Avenue, 19th Floor
                                               Miami, FL 33131

Barry Ostrager and Rachel S. Weiss,
Simpson, Thatcher & Bartlett
425 Lexington Avenue
New York, New York 10017

Michael D. Kibler & Jonathan M. Weiss
Simpson, Thatcher & Bartlett
1999 Avenue of the Stars, 29th Floor
Los Angeles, CA 90067

Roger S. Kobert, Esq. and Mark
Pugliese, Esq.
Rafferty, Kobert, Tenenholz, Bounds &
Hess
1401 Brickell Ave., Suite 825

I hereby certify that the foregoing is a true copy of the record in my office this day, Nov 12, 2014.
Sharon R. Bock , Clerk Circuit Court, Palm Beach County, Florida
BY _____ Deputy Clerk     17

IN THE CIRCUIT COURT OF THE 15TH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO. 50 2009 CA 010187 XXXX MB AJ

MOHAMMAD ANWAR FARID AL-SALEH

Plaintiff,

vs.

HARRY SARGEANT, III,
MUSTAFA ABU-NABA'A, and
INTERNATIONAL OIL TRADING
COMPANY, LLC, a Florida corporation,

Defendants.

_____/

## FINAL COST JUDGMENT FOR PLAINTIFF

This matter came before the court upon the Plaintiff's Motion to Tax Costs filed August 8, 2011. After a hearing on notice, the court entered its Order Granting Plaintiff's Motion to Tax Costs dated February 2, 2012. Accordingly, it is:

ADJUDGED that the Plaintiff, MOHAMMAD ANWAR FARID AL-SALEH, have and recover of the Defendants, HARRY SARGEANT, III, MUSTAFA ABU-NABA'A, and INTERNATIONAL OIL TRADING COMPANY, LLC, a Florida corporation, taxable costs in this action in the total amount of EIGHTY-FIVE THOUSAND FOUR HUNDRED EIGHTY-NINE DOLLARS AND NINETY-SEVEN CENTS ($85,489.97), for all of which let execution issue forthwith. This judgment shall bear interest at the rate of 4.70 percent per annum until paid.

The names, addresses of the parties are:

Plaintiff:
MOHAMMAD ANWAR FARID AL-SALEH
c/o Louis M. Silber, Esq.
SILBER & DAVIS
1800 Old Okeechobee Road
West Palm Beach, Florida 33409

Defendant:
HARRY SARGEANT, III
Social Security Number: REDACTED

1420 North Ocean Boulevard
Delray Beach, FL 33483-7365

Defendant:
MUSTAFA ABU-NABA'A
Social Security Number: UNKNOWN
2551 S. Bayshore Drive, # 1014
Coconut Grove, FL 33133-6002

Defendant:

CFN 20120056921, OR BK 25011 PG 804, RECORDED 02/11/2012 12:01:42
Sharon R. Bock, CLERK & COMPTROLLER, Palm Beach County, NUM OF PAGES 2

International Oil Trading Co., LLC                Boca Raton, FL 33432
1 North Federal Highway, Suite 600

The Judgment Debtors shall complete under oath the Florida Rule of Civil Procedure Form 1.977 (Fact Information Sheet), including all required attachments, and serve it on the judgment creditor's attorney, or the judgment creditor if the judgment creditor is not represented by an attorney, within 45 days from the date of this final judgment, unless the final judgment is satisfied or post-judgment discovery is stayed. The fact information sheet need not be recorded in the public records.

Jurisdiction of this case is retained to enter further orders that are proper to compel the judgment debtors to complete Form 1.977, including all required attachments, and serve it on the judgment creditor's attorney, or the judgment creditor if the judgment creditor is not represented by an attorney.

DATED this ___ day of February, 2012

THE HONORABLE ROBIN L. ROSENBERG
Circuit Court Judge
Miami, FL 33131

Copies furnished to:

Louis M. Silber and Allison J. Davis
1806 Old Okeechobee Road
West Palm Beach, Florida 33409

Barry Ostrager and Rachel S. Weiss,
Simpson, Thatcher & Bartlett
425 Lexington Avenue
New York, New York 10017

Michael D. Kibler & Jonathan M. Weiss
Simpson, Thatcher & Bartlett
1999 Avenue of the Stars, 29th Floor
Los Angeles, CA 90067

Roger S. Kobert, Esq. and Mark
Pugliese, Esq.
Rafferty, Kobert, Tanenholz, Bounds &
Hess
1401 Brickell Ave., Suite 825

Carlos L. de Zayas
Lydecker | Diaz
1221 Brickell Avenue, 19th Floor
Miami, FL 33131


I hereby certify that the foregoing is a true copy of the record in my office this day, Apr 18, 2012. Sharon R. Bock, Clerk Circuit Court, Palm Beach County, Florida BY _____ Deputy Clerk

IN THE CIRCUIT COURT OF THE 15TH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO. 50 2008 CA 010187 XXXX MB AJ

MOHAMMAD ANWAR FARID AL-SALEH,

        Plaintiff/Judgment Creditor,

vs.

HARRY SARGEANT, III,
MUSTAFA ABU-NABA'A, and
INTERNATIONAL OIL TRADING
COMPANY, LLC, a Florida corporation,

        Defendants/Judgment Debtors.



## SUPPLEMENTAL JUDGMENT AWARDING PRE-JUDGMENT INTEREST

WHEREAS, in the above-captioned case (Case No. 50 2008 CA 010187 XXXX MB AJ), Plaintiff Mohammad Anwar Farid Al-Saleh filed a complaint on April 10, 2008, against Defendants Harry Sargeant, III, Mustafa Abu-Naba'a and International Oil Trading Company, LLC ("IOTC USA") asserting claims for common law fraud, conspiracy to commit fraud, aiding and abetting fraud, breach of fiduciary obligations under Jordanian law, tortious injury under Jordanian law, and breach of the Unfair Competition and Trade Secrets Law Number 15 of the Year 2000 under Jordanian law;

WHEREAS, the above-captioned action came to trial before this Court on July 11, 2011, to determine whether Defendants Sargeant, Abu-Naba'a and IOTC USA were liable for money damages to Plaintiff Al-Saleh;

WHEREAS, upon a jury trial, the jury found in favor of Plaintiff Al-Saleh on Plaintiff's claim of common law fraud;



EXHIBIT
C

CFN 20130409025, OR BK 26327 PG 704,RECORDED 09/17/2013 08:25:51 20
Sharon R. Bock,CLERK & COMPTROLLER, Palm Beach County, NUM OF PAGES 4

WHEREAS, upon a jury trial, the jury found in favor of Plaintiff Al-Saleh on Plaintiff's claim of conspiracy to commit fraud;

WHEREAS, upon a jury trial, the jury found in favor of Plaintiff Al-Saleh on Plaintiff's claim of aiding and abetting fraud;

WHEREAS, upon a jury trial, the jury found in favor of Plaintiff Al-Saleh on Plaintiff's claim of breach of fiduciary obligations under Jordanian law;

WHEREAS, upon a jury trial, the jury found in favor of Plaintiff Al-Saleh on Plaintiff's claim of tortious injury under Jordanian law;

WHEREAS, upon a jury trial, the jury found in favor of Plaintiff Al-Saleh on Plaintiff's claim of breach of the Unfair Competition and Trade Secrets Law Number 15 of the Year 2000 under Jordanian law;

WHEREAS, the jury awarded Plaintiff Al-Saleh damages in the amount of $28,800,000.00 for all claims;

WHEREAS, the Fourth District Court of Appeal issued an opinion on August 7, 2013 awarding Plaintiff pre-judgment interest on the amount of $28,800,000.00 from August 31, 2009 to July 26, 2011; and

WHEREAS, the Fourth District Court of Appeal issued its mandate on August 23, 2013 remanding for further proceedings consistent with its August 7, 2013 opinion.

ORDERED AND ADJUDGED AS FOLLOWS:

A. Plaintiff does and recovers from the Defendants, jointly and severally, judgment in the amount of $3,484,753.92 which is supplemental and additional to the other judgments entered in this case on September 19, 2011 in the amount of $28,800,000.00 plus post-judgment interest *nonc pro tunc* to July 27, 2011 ("Verdict Judgment") and February 9, 2012 in the amount

2

21

of $85,489.97 plus post-judgment interest ("Cost Judgment"), together with post-judgment interest at the applicable statutory rate set forth by State of Florida's Chief Financial Officer, *non pro tunc* to July 27, 2011, for all of which let execution issue forthwith.

B.     The names and addresses of the parties are:

Plaintiff:

> Mohammad Anwar Farid Al-Saleh
> c/o Edward H. Davis, Jr., Esquire
> Astigarraga Davis Mullins & Grossman, P.A.
> 701 Brickell Avenue, 16th Floor
> Miami, Florida 33131

Defendants:

> Harry Sargeant, III
> 1420 North Ocean Boulevard
> Delray Beach, FL 33483-7363
>
> Mustafa Abu-Naba'a
> 2951 S. Bayshore Drive, #1014
> Coconut Grove, FL 33133-6002
>
> International Oil Trading Company, LLC
> 1 North Federal Highway, Suite 500
> Boca Raton, Florida 33432

C.     The judgment debtors shall complete under oath Florida Rule of Civil Procedure Form 1.977 (Fact Information Sheet), including all required attachments, and serve it on the judgment creditor's attorney, or the judgment creditor if the judgment creditor is not represented by an attorney, within 45 days from the date of this final judgment, unless the final judgment is satisfied or post-judgment discovery is stayed. The fact information sheet need not be recorded in the public records.

D.     Jurisdiction of this case is retained to enter further orders that are proper to compel the judgment debtors to complete form 1.977, including all required attachments, and

3

serve it on the judgment creditor's attorney, or the judgment creditor if the judgment creditor is not represented by an attorney.

E. The Court reserves jurisdiction to award attorney's fees, if any, and taxable costs.

The Clerk of the Court is directed to enter this judgment.

Dated this _16_ day of September, 2013.

HONORABLE JOSEPH MARX

Copies provided:

All Counsel of Record



I hereby certify that the foregoing is a true copy of the record in my office this day, Nov 12, 2014. Sharon R. Bock , Clerk Circuit Court, Palm Beach County, Florida BY _____ Deputy Clerk    23

IN THE CIRCUIT COURT OF THE 15TH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO. 50 2008 CA 010187 XXXX MB AJ

MOHAMMAD ANWAR FARID AL-SALEH,

      Plaintiff/Judgment Creditor,

vs.

HARRY SARGEANT, III,
MUSTAFA ABU-NABA'A, and
INTERNATIONAL OIL TRADING
COMPANY, LLC, a Florida corporation,

      Defendants/Judgment Debtors.

_____/



## AMENDED SUPPLEMENTAL JUDGMENT AWARDING PRE-JUDGMENT INTEREST

WHEREAS, in the above-captioned case (Case No. 50 2008 CA 010187 XXXX MB AJ), Plaintiff Mohammad Anwar Farid Al-Saleh filed a complaint on April 10, 2008, against Defendants Harry Sargeant, III, Mustafa Abu-Naba'a and International Oil Trading Company, LLC ("IOTC USA") asserting claims for common law fraud, conspiracy to commit fraud, aiding and abetting fraud, breach of fiduciary obligations under Jordanian law, tortious injury under Jordanian law, and breach of the Unfair Competition and Trade Secrets Law Number 15 of the Year 2000 under Jordanian law;

WHEREAS, the above-captioned action came to trial before this Court on July 11, 2011, to determine whether Defendants Sargeant, Abu-Naba'a and IOTC USA were liable for money damages to Plaintiff Al-Saleh;

WHEREAS, upon a jury trial, the jury found in favor of Plaintiff Al-Saleh on Plaintiff's claim of common law fraud;

CFN 20130477731, OR BK 26425 PG 233,RECORDED 11/01/2013 19:11:37 24
Sharon R. Bock,CLERK & COMPTROLLER, Palm Beach County, NUM OF PAGES 3

WHEREAS, upon a jury trial, the jury found in favor of Plaintiff Al-Saleh on Plaintiff's claim of conspiracy to commit fraud;

WHEREAS, upon a jury trial, the jury found in favor of Plaintiff Al-Saleh on Plaintiff's claim of aiding and abetting fraud;

WHEREAS, upon a jury trial, the jury found in favor of Plaintiff Al-Saleh on Plaintiff's claim of breach of fiduciary obligations under Jordanian law;

WHEREAS, upon a jury trial, the jury found in favor of Plaintiff Al-Saleh on Plaintiff's claim of tortious injury under Jordanian law;

WHEREAS, upon a jury trial, the jury found in favor of Plaintiff Al-Saleh on Plaintiff's claim of breach of the Unfair Competition and Trade Secrets Law Number 15 of the Year 2000 under Jordanian law;

WHEREAS, the jury awarded Plaintiff Al-Saleh damages in the amount of $28,800,000.00 for all claims;

WHEREAS, the Fourth District Court of Appeal issued an opinion on August 7, 2013 awarding Plaintiff pre-judgment interest on the amount of $28,800,000.00 from August 31, 2009 to July 26, 2011; and

WHEREAS, the Fourth District Court of Appeal issued its mandate on August 23, 2013 remanding for further proceedings consistent with its August 7, 2013 opinion.

ORDERED AND ADJUDGED AS FOLLOWS:

A.     Plaintiff does and recovers from the Defendants, jointly and severally, judgment in the amount of $3,484,753.92 which is supplemental and additional to the other judgments entered in this case on September 19, 2011 in the amount of $28,800,000.00 plus post-judgment interest *nunc pro tunc* to July 27, 2011 ("Verdict Judgment") and February 9, 2012 in the amount

2

25

CFR 20110477791 BOOK 99425 PAGE 234, 1 OF 3

of $85,489.97 plus post-judgment interest ("Cost Judgment"), together with post-judgment interest at the applicable statutory rate set forth by State of Florida's Chief Financial Officer, *nunc pro tunc* to July 27, 2011, for all of which let execution issue forthwith.

B. The names and addresses of the parties are:

Plaintiff:

Mohammad Anwar Farid Al-Saleh
c/o Edward H. Davis, Jr., Esquire
Astigarraga Davis Mullins & Grossman, P.A.
701 Brickell Avenue, 16th Floor
Miami, Florida 33131

Defendants:

Harry Sargeant, III
1420 North Ocean Boulevard
Gulfstream, FL 33483

Mustafa Abu-Naba'a
Calle Carlos Sanchez y Sanchez #22
Naco
Santo Domingo, Dominican Republic

International Oil Trading Company, LLC
1 North Federal Highway, Suite 500
Boca Raton, Florida 33432

C. The Court reserves jurisdiction to award attorney's fees, if any, and taxable costs.

The Clerk of the Court is directed to enter this judgment.

Entered this 30th day of October, 2013 *nunc pro tunc* to September 16, 2013.

_____
HONORABLE JOSEPH MARX

Copies provided:

All Counsel of Record

3

I hereby certify that the foregoing is a true copy
of the record in my office this day, Nov 12, 2014.
Sharon R. Bock , Clerk Circuit Court, Palm Beach County, Florida
BY _____ Deputy Clerk      26

**Appendix B**

Agreed Order Charging Membership Interest of Harry Sargeant, III in BTB Refining, LLC

(Feb. 10, 2013)

(CR 31-33)

35

Case No. 2014-DCV-5860-G

MOHAMMAD ANWAR                              IN THE DISTRICT COURT
FARID AL-SALEH

    Plaintiff/Judgment Creditor,

vs.                                                               319th JUDICIAL DISTRICT

HARRY SARGEANT III,
MUSTAFA ABU-NABA'A, and
INTERNATIONAL OIL TRADING
COMPANY, LLC,

    Defendants/Judgment Debtors.          NUECES COUNTY, TEXAS


## AGREED ORDER CHARGING MEMBERSHIP INTEREST OF HARRY SARGEANT, III IN BTB REFINING, LLC

THIS CAUSE came before the Court on the Agreed Motion for Charging Order (the "Motion") filed by Plaintiff Mohammad Anwar Farid Al-Saleh ("Al-Saleh"). The Court, having considered the Motion, the record in this matter, and the agreement of counsel, finds as follows:

A.    This Court is a court of competent jurisdiction to issue a charging order charging Harry Sargeant, III's ("Sargeant") membership interest(s) in BTB Refining, LLC ("BTB").

B.    Al-Saleh recovered the following judgments against Sargeant:

    i.    The Judgment on the Verdict, dated September 19, 2011, in the amount of $28,800,000.00, together with post-judgment interest at the annual rate of 6% entered *nunc pro tunc* to July 27, 2011;

    ii.    The Final Cost Judgment, dated February 9, 2012, in the amount of $85,489.97, together with post-judgment interest at the annual rate of 4.75% entered *nunc pro tunc* to July 27, 2011;

31

iii. The Supplemental Judgment Awarding Pre-Judgment Interest, dated September 16, 2013, in the amount of $3,484,753.92, together with post-judgment interest at the annual rate of 6% entered *nunc pro tunc* to July 27, 2011 (*collectively*, "Judgments").

C. On November 20, 2014, the Judgments were filed and accepted by this Court and domesticated pursuant to the Texas Uniform Enforcement of Foreign Judgments Act, section 35.001 *et seq.*, of the Texas Civil Practice and Remedies Code. As such, the Judgments have the same effect as a judgment of this Court. See Civil Practice and Remedies Code § 35.003(c).

D. The Judgments are final, no longer appealable, and remain unsatisfied.

E. Pursuant to section 101.112 of the Texas Business Organizations Code ("TBOC"), Al-Saleh is entitled to a charging order charging Sargeant's membership interest in BTB.

F. Sargeant is the owner of 100% of the membership interest in BTB.

**IT IS THEREFORE ORDERED AND ADJUDGED THAT:**

1. Pursuant to § 101.112 of the TBOC, Sargeant's membership interest in BTB is hereby charged in the combined amount due to Al-Saleh on the Judgments: $32,370,243.89, plus interest at the statutory rate.

2. In accordance with in accordance with the Texas Business Organizations Code § 101.112(c) the charging order constitutes a lien upon Sargeant's membership interest in BTB and such charging order lien may not be foreclosed upon under the Texas Business Organizations Code or any other law.

3. Pursuant to § 101.112(b) of the TBOC, Al-Saleh shall have the right to receive any distribution to which Sargeant would otherwise be entitled, until the amounts due on the

2

32

Judgments, plus interest, are satisfied and BTB is directed to pay any such distributions directly to Al-Saleh, care of Astigarraga Davis Mullins & Grossman, P.A.

4. Except for the relief granted herein, this Order does not itself adjudicate any claims, defenses, counterclaims, issues or arguments by or between Al-Saleh, BTB, and/or Sargeant (including without limitation those matters currently pending in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, Case No. 50 2008 CA 010187 XXXX MB AJ) and is entered without prejudice to all parties' respective rights to assert same in the future in any /all appropriate forum(s). The Court acknowledges the reservation of these rights by Al-Saleh, BTB, and Sargeant.

DONE and ORDERED in Nueces County, Texas on _February 19, 2013_

_____
DISTRICT COURT JUDGE

AGREED AS TO FORM AND SUBSTANCE:

By: _____
Hector Canales
Texas Bar No. 24006951
Canales & Simonson, P.C.
2601 Morgan Ave.
Corpus Christi, Texas 78405
Tel: 361-883-0601
Fax: 361-884-7023
HACanales@CanalesSimonson.com

Counsel for Plaintiff Mohammad Anwar Farid Al-Saleh

By: _____
Frederick W. Sultan, IV
Texas Bar No. 00797524
GARDERE WYNNE SEWELL, LLP
600 Congress Ave., Ste. 3000
Austin, TX 78701
512.542.7065
512.542.7260 (fax)
fsultan@gardere.com

Counsel for BTB Refining, LLC and Defendant Harry Sargeant, III

cc: All Counsel of Record

3

33

# Appendix C

Verified Amended Petition, Third-Party Petition, Application for Temporary Restraining Order and Injunctive Relief and Request for Appointment of Receiver

(June 2, 2015)

(CR 38-72)

## CAUSE NO. 2014 DCV-5860-G

| | | |
|---|---|---|
| **MOHAMMAD ANWAR FARID** | § | **IN THE DISTRICT COURT FOR** |
| **AL SALEH** | § | |
| *Plaintiff/Judgment Creditor,* | § | |
| | § | |
| | § | |
| **v.** | § | **319ᵗʰ JUDICIAL DISTRICT** |
| | § | |
| **HARRY SARGEANT III,** | § | |
| **MUSTAFA ABU-NABA'A, and** | § | |
| **INTERNATIONAL OIL TRADING** | § | |
| **COMPANY, LLC, BTB REFINING, LLC** | § | |
| **and SARGEANT MARINE, LTD.** | § | |
| *Defendants/Judgment Debtors.* | § | **NUECES COUNTY, TEXAS** |

**VERIFIED AMENDED PETITION, THIRD-PARTY PETITION, APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF
<u>AND REQUEST FOR APPOINTMENT OF RECEIVER</u>**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff Mohammad Anwar Farid Al Saleh ("Plaintiff" or "Al Saleh"),

and files this Verified Amended Petition, Third-Party Petition, Application for Temporary

Restraining Order and Injunctive Relief and Request for Appointment of Receiver ("Petition"),

complaining of Defendants/Judgment Debtors Harry Sargeant III ("Sergeant"), Mustafa Abu

Naba'a ("Naba'a"), International Oil Trading Company, LLC ("IOTC USA"), BTB Refining,

LLC ("BTB") and Sargeant Marine, Ltd. ("Sargeant Marine") (sometimes collectively

"Defendants"). In support thereof, Plaintiff would respectfully show unto this Court as follows:

## *TO BE FILED UNDER SEAL:*

## *CONTAINS SENSITIVE INFORMATION*

# I.
## DISCOVERY CONTROL PLAN

1. Plaintiff intends to conduct discovery under Level Two (2) of Rule 190.3 of the Texas Rules of Civil Procedure, seeks monetary relief in excess of $1,000,000, a Temporary Restraining Order ("TRO") and further injunctive relief against Defendants Sargeant, BTB and Sargeant Marine, and further seeks all other relief, whether at law or in equity, to which it is justly entitled.

# II.
## INTRODUCTION AND SUMMARY

2. On September 20, 2011, and after a Jury Trial before the Fifteenth Judicial Circuit Court in and for Palm Beach County, Florida, the Florida Court entered a Final Judgment on the Verdict in the amount of $28,800,000.00, plus post-judgment interest at a rate of six percent (6%), *nunc pro tunc* to July 27, 2011. On February 9, 2012, a Final Cost Judgment for Plaintiff was entered in the amount of $85,489.97. On September 16, 2013, a Supplemental Judgment Awarding Pre-Judgment Interest in the amount of $3,484,753.92 was entered.[1] All of the foregoing Judgments (collectively "Florida Judgments") have become final and no opportunity exists whatsoever to alter them in any form. Notably, Mohammad Anwar Farid Al Saleh, the Plaintiff herein, is the Judgment Creditor. Also notable is the fact that Harry Sargeant III, Mustafa Abu Naba'a and International Oil Trading Company, LLC three (3) of the Defendants herein, are the Judgment Debtors.

3. As referenced above, the Judgment Debtors are Defendants before this Honorable Court. In particular, Defendant Sargeant has consciously refused and systematically avoided satisfying the foregoing Judgments against him notwithstanding his obvious ability to satisfy such Judgments. Defendant Sargeant has evaded his obligations as determined by the Florida

---

[1] *See* **Exhibits A, B and C**, true and correct copies of the Florida Judgments.

Jury and Court to the extreme detriment of the Plaintiff. Defendant Sargeant has done so for a period now approaching four (4) years. In essence, Defendant Sargeant has displayed a sheer and utter contempt and disregard of the judicial process.

4. A sales transaction is scheduled to close on or about June 5, 2015 at which time Defendant BTB, and ultimately Defendant Sargeant as Defendant BTB is merely his alter ego, would ultimately receive approximately $52 million. A portion of the foregoing sum should quite clearly and justly be distributed to Plaintiff in order to completely and fully satisfy the Judgments existing in his favor. Plaintiff respectfully requests the assistance of this Court for this purpose.

5. Plaintiff immediately seeks a Temporary Restraining Order enjoining Defendants from disposing of, directing or transferring away, or in any way removing the availability of funds sufficient to satisfy Plaintiff's judgments and to direct such funds to be taken into custody by a receiver appointed by this Court. Plaintiff requests such relief given the substantial likelihood, even certainty, that such funds shall be immediately transferred to offshore accounts or accounts otherwise beyond the jurisdictional powers of this Honorable Court, by further frustrating Plaintiff's attempts to have satisfied the Judgments duly and lawfully entered in his favor.

## III.
## PARTIES, JURISDICTION AND VENUE

6. Plaintiff Mohammad Anwar Farid Al-Saleh is a citizen of Jordan and resident of Amman, Jordan.

7. Defendant Harry Sargeant III is an individual whose primary residence is in the State of Florida. Defendant Sargeant may be cited by serving process upon him individually at his usual place of abode at the following address, or wherever he may be found: 1420 North

40

Ocean Boulevard, Gulfstream, Delray Beach, Florida 33483-7363. Defendant Sargeant has been served and has appeared by counsel of record in connection with this matter.

8. Defendant Mustafa Abu Naba'a is an individual whose primary residence is in the State of Florida. Defendant Naba'a may be cited by serving process upon him individual at his usual place of abode at the following address, or wherever he may be found: 2951 S. Bayshore Drive #1014, Coconut Grove, Florida 33133.

9. Defendant BTB Refining, LLC is now a limited liability company organized and existing under the laws of the State of Texas, with its purported place of business in Texas located at 6600 Up River Road, Corpus Christi, Texas 78409. Defendant BTB may be cited by serving its Registered Agent for service of process as follows: Capitol Corporate Services, Inc., 800 Brazos, Suite 400, Austin, Texas 78701. Defendant BTB has been served and has appeared by counsel of record in connection with this matter.

10. Defendant Sargeant Marine, Ltd. is a foreign, for-profit corporation organized and existing under the laws of The Bahamas. Although Sargeant Marine maintains no office in the State of Texas, is not registered to do business in the State of Texas and has no designated agent for service of process in the State of Texas, Sargeant Marine has consented to jurisdiction within the State of Texas by conducting business within this State including, but not limited to, conducting business within the State of Texas with Defendants, making loans and undertaking contractual obligations wholly or partially performable within the State of Texas and acquiescing to the jurisdiction of the Courts of the State of Texas, as well as the transactions and occurrences forming the subject matter of this litigation. Accordingly, and pursuant to §17.044 of the Texas Civil Practice & Remedies Code, Sargeant Marine may be cited to appear by serving the Texas Secretary of State as follows: Texas Secretary of State, State of Texas, Statutory Documents

41

Section – Citations Unit, P.O. Box 12079, Austin, Texas 78711-2076. The Texas Secretary of State may then serve process by any lawful means upon the home office of Sargeant Marine as follows: Sargeant Marine, Ltd., Shirlaw House, Shirley Street, Nassau, New Providence, The Bahamas, P.O. Box SS-19084.

11. Additionally and in the alternative, and pursuant to Rule 108a of the Texas Rules of Civil Procedure, Sargeant Marine may be served with process and cited to appear according to the terms of the Hague Convention on the Service Abroad of Judicial & Extrajudicial Documents ("Hague Convention") by serving process upon the Central Authority of The Bahamas designated for receipt of service of process as established pursuant to the Hague Convention as follows: Attorney General, Legal Affairs Division, 7th Floor Post Office Building, East Hill Street, P. O. Box N 3007, Nassau, The Bahamas. Service of process by the Attorney General, Legal Affairs Division should be directed to Sargeant Marine by Formal Service as follows: Sargeant Marine, Ltd., Shirlaw House, Shirley Street, Nassau, New Providence, The Bahamas, P.O. Box SS-19084.

12. This Court has subject matter jurisdiction over this matter as the amount in controversy exceeds this Court's minimum jurisdictional requirements. This Court has personal jurisdiction over Defendants Sargeant and Naba'a as each has engaged in business within the State of Texas by, among other things, contracting with a Texas company and Texas residents, with such contract to be performable, in whole or in part, within the State of Texas. Furthermore, this Court has personal jurisdiction over Defendants Sargeant and Naba'a as each has committed a tort or engaged in tortious activity – made the subject of this litigation – which occurred, in whole or in part, within the State of Texas. This Court has personal jurisdiction over Defendant BTB as it is currently a Texas limited liability company with offices located in

42

Corpus Christi, Texas and conducts business within the State of Texas. This Court has personal jurisdiction over Defendants IOTC USA and Sargeant Marine because each has purposefully availed itself of the privileges of conducting business within the State of Texas and established minimum contacts sufficient to confer jurisdiction over it.

13. As a result, Defendants Sargeant, Naba'a, IOTC USA, BTB and Sargeant Marine are all subject to this Court's exercise of personal jurisdiction over them by virtue of their presence within the State of Texas and as a result of each Defendant's purposeful availment of the rights and privileges of residing within and/or conducting business within the State of Texas. Accordingly, this Court's exercise of jurisdiction over Defendants Sargeant, Naba'a, IOTC USA, BTB and Sargeant Marine is proper, will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

14. Venue is proper in Nueces County, Texas pursuant to §15.002(a)(1) of the Texas Civil Practice & Remedies Code because all or a substantial part of the events or omissions giving rise to the claim occurred in Nueces County, Texas and pursuant to §15.002(a)(3) because Defendant BTB's principal office in Texas is located within Nueces County, Texas.

## IV.
## FACTS COMMON TO ALL CAUSES OF ACTION

15. This proceeding has as its genesis a business venture beginning in 2004 and involving Plaintiff, Defendant Sargeant and Defendant Naba'a, who, together, sought to bid for and obtain U.S. Government fuel contracts to transport fuel through Jordan to Iraq in aid of the American war effort. The three (3) did, in fact, obtain these contracts with significant help from Plaintiff in securing authorization letters from the King of Jordan to transport the fuel across Jordan. From 2004 through 2010, the contracts brought in total revenues of approximately $1.95 billion, with estimated profits of up to $210 million.

16.     During the performance of the contracts, apparently believing his usefulness had expired, Defendants Sargeant and Naba'a attempted to fraudulently exclude Plaintiff from the profits of the business venture. Specifically, on June 23, 2004, IOTC JORDAN was awarded the first in a series of fuel contracts from the United States Government to supply fuel to the U. S. troops during the Gulf War ("Fuel Contracts"). On January 25, 2005, Sargeant and Abu Naba'a formed International Oil Trading Company, LLC, a Florida corporation ("IOTC USA"). Defendants Sargeant and Mr. Naba'a siphoned the profits of the business away from the hands of Plaintiff and into their own pockets. In 2008, Plaintiff brought suit on these fraudulent acts in Florida State Court.[2] A Florida Jury found that IOTC USA was awarded subsequent Fuel Contracts to the detriment of Plaintiff and the benefit of Defendants. IOTC USA is also a Judgment Debtor.

17.     On July 27, 2011, a Florida jury entered the following verdict:

## VERDICT

We, the Jury, return the following verdict:

1.     Did Harry Sargeant, III, Mustafa Abu-Naba'a and International Oil Trading Company, LLC commit common law fraud which caused money damages to Mohammad Al-Saleh?

| | |
|---|---|
| Harry Sargeant, III | YES ✓  NO _____ |
| Mustafa Abu-Naba'a | YES ✓  NO _____ |
| International Oil Trading Company, LLC | YES ✓  NO _____ |

---

[2] Cause No. 50 2008 CA 010187 XXXX MB AJ; *Mohammad Anwar Farid Al-Saleh v. Harry Sargeant III, Mustafa Abu-Naba'a, and International Oil Trading Company, LLC*; In the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida.

2. Did Harry Sargeant, III and Mustafa Abu-Naba'a conspire to commit fraud which caused money damages to Mohammad Al-Saleh?

YES __✓__ NO _____

If your answer to question 1 above is NO as to all defendants, then you must skip question 3 entirely, and proceed to question 4. If, however, your answer to question 1 is YES as to any defendant, then please answer question 3.

3. Did Mustafa Abu-Naba'a and International Oil Trading Company, LLC aid and abet the commission of fraud which caused money damages to Mohammad Al-Saleh?

Mustafa Abu-Naba'a                          YES __✓__ NO _____

International Oil Trading Company, LLC       YES __✓__ NO _____

4. Did Harry Sargeant, III and Mustafa Abu-Naba'a breach a fiduciary obligation which caused money damages to Mohammad Al-Saleh?

Harry Sargeant, III                         YES __✓__ NO _____

Mustafa Abu-Naba'a                          YES __✓__ NO _____

5. Did Harry Sargeant, III and Mustafa Abu-Naba'a tortiously injure, and thereby cause money damages to, Mohammad Al-Saleh?

Harry Sargeant, III                         YES __✓__ NO _____

Mustafa Abu-Naba'a                          YES __✓__ NO _____

6. Did Harry Sargeant, III and Mustafa Abu-Naba'a breach the Unfair Competition and Trade Secrets Law Number 15 of the Year 2000 under Jordanian Law which caused money damages to Mohammad Al-Saleh?

Harry Sargeant, III                         YES __✓__ NO _____

Mustafa Abu-Naba'a                          YES __✓__ NO _____

If your answers to questions 1-6 are *all* NO (including any skipped questions), then your verdict is for Harry Sargeant, III, Mustafa Abu-Naba'a, and International Oil Trading Company, LLC and you should not proceed further except to date and sign this verdict form. If *any* of your answers to questions 1-6 is YES, then please answer question 7 as appropriate.

7. What is the total amount of money damages sustained by Mohammad Al-Saleh that was caused by defendant(s)?     $ __28.8 Million__

SO SAY WE ALL, this __27th__ day of July, 2011.

_____
FOREPERSON
Joe Dawson

45

*See* **Exhibit D**.

18.     The Florida Court's Final Judgment, entered in accordance with the Jury's Verdict above, provides in pertinent part:

> WHEREAS, the above-captioned action came to trial before this Court on July 11, 2011, to determine whether Defendants Sargeant, Abu-Naba'a and IOTC USA were liable for money damages to Plaintiff Al-Saleh;
>
> WHEREAS, upon a jury trial, the jury found in favor of Plaintiff Al-Saleh on Plaintiff's claim of *common law fraud*;
>
> WHEREAS, upon a jury trial, the jury found in favor of Plaintiff Al-Saleh on Plaintiff's claim of *conspiracy to commit fraud*;
>
> WHEREAS, upon a jury trial, the jury found in favor of Plaintiff Al-Saleh on Plaintiff's claim of *aiding and abetting fraud*;
>
> WHEREAS, upon a jury trial, the jury found in favor of Plaintiff Al-Saleh on Plaintiff's claim of *breach of fiduciary obligations* under Jordanian law;
>
> WHEREAS, upon a jury trial, the jury found in favor of Plaintiff Al-Saleh on Plaintiff's claim of *tortious injury* under Jordanian law;
>
> WHEREAS, upon a jury trial, the jury found in favor of Plaintiff Al-Saleh on Plaintiff's claim of *breach of the Unfair Competition and Trade Secrets Law Number 15 of the Year 2000* under Jordanian law;
>
> WHEREAS, the jury awarded Plaintiff Al-Saleh *damages in the amount of $28,800,000.00 for all claims*;

> **ORDERED AND ADJUDGED AS FOLLOWS:**
>
> A. Plaintiff does and recovers from the Defendants, jointly and severally, judgment in the amount of $28,800,000.00, together with post-judgment interest at six percent (6%), nunc pro tunc to July 27, 2011, for all of which let execution issue.

*See* **Exhibit A** (italics and underlining added).

19.     Sargeant, Naba'a and IOTC USA (collectively sometimes referred to as "Judgment Debtors") appealed and were unsuccessful.[3] Following entry of the Judgment on the

---

[3] *Sargeant v. Al-Saleh*, 120 So. 3d 86 (Fla. 4th DCA 2013), *cert denied*, 143 So. 3d 921 (Fla. 2014).

Verdict, the Florida Court entered two (2) further Judgments. On February 9, 2012, the Court entered its Final Cost Judgment, in the amount of $85,489.97, with interest. On September 16, 2013, the Court further entered Supplemental Judgment awarding $3,484,753.92, with interest, for pre-judgment interest (collectively, the "Florida Judgments"). *To date, the outstanding amount of the final Florida Judgments, with accumulated interest, stands at over $38 million.*

20. This was not the first time a court had entered a judgment finding that Defendant Sargeant and his entities had committed fraud. Specifically, following an arbitration in 2006, Petroleos de Venezuela S.A. ("PDVSA") obtained an award against Trigeant (a company owned by Defendant Sargeant and his family) for $17 million plus interest. Trigeant and PDVSA simultaneously were locked in battle in another arbitration for over $30 million. Defendant Sargeant obtained outside capital to deal with the first debt to PDVSA from American Capital Financial Services, Inc. ("AMCAP"), which loaned $22 million to Trigeant. The loan was memorialized by a note and lien on Trigeant's assets, an asphalt refinery located in Corpus Christi, Texas (the "Refinery"). The AMCAP loan monies were used to pay the first arbitral award to PDVSA.

21. But, the other PDVSA arbitration was looming and ultimately resulted in a $35 million award against Trigeant. In the interim, Trigeant had lost its major revenue stream and had difficulty meeting its obligations under AMCAP's note. AMCAP put Trigeant on notice of its default, and threatened to foreclose on the refinery. In late 2007, Defendant Sargeant entered into negotiations with AMCAP to purchase the note and lien through a new company, Defendant BTB, which was created on December 10, 2007. Defendant Sargeant's motive in acquiring the note and lien through Defendant BTB was to free Trigeant from its obligation to pay its

47

creditors. His plan was to create a scenario for Defendant BTB to foreclose on the Refinery, thus divesting Trigeant of ownership and frustrating Trigeant's creditor.

22. Defendant Sargeant's fraudulent machinations came to fruition – AMCAP sold the note and lien to Defendant BTB, which then foreclosed on the Refinery. After it became aware, PDVSA sought to undo Defendant BTB's foreclosure of the refinery in Corpus Christi in Federal Court. *The Federal Court, with Judge Nelva Gonzales Ramos presiding, ultimately found that Defendants Sargeant and BTB had committed a fraud* and entered judgment accordingly.[4]

23. Thus, in the PDVSA Texas litigation, Defendant Sargeant and Defendant BTB were found to be fraudulent actors. And again in respect of their conduct related to Plaintiff, Defendants Sargeant and Naba'a, a Florida jury also found that to be true on July 27, 2011 when it entered a verdict adjudicating Defendants Sargeant, Naba'a, and IOTC USA as fraudsters on six separate counts of fraud and other tortious acts. Since then, Defendants Sargeant and Naba'a have shielded themselves in layers of onshore and offshore corporate vehicles to put as much space between themselves and their assets as possible, thereby frustrating Plaintiff's efforts to satisfy his Judgments and effectively making a mockery of the Florida Court's Judgments.

24. Specifically, despite being adjudicated as fraudsters, Defendants Sargeant and Naba'a have continued to hide their assets. What is more, Defendant Sargeant, in particular, continues to frustrate the post-judgment discovery process by lodging objections and protective orders to nearly every discovery request propounded by Plaintiff, objecting to third-party production of documents and bank records, and classifying every scrap of paper produced in this proceeding as "highly confidential" – which, pursuant to the parties pre-trial Protective Order,

---

[4] Findings of Fact and Conclusions of Law; Civil Action No. 2:09-cv-0038; *PDVSA Petroleo S.A. v. Trigeant, Ltd., et al.*; In the United States District Court for the Southern District of Texas, Corpus Christi Division (Gonzalez Ramos, J.), a true and correct copy of which is attached hereto as **Exhibit E**.

grants unwarranted confidentiality to financial records and prohibits introduction of any document to the Florida court absent Defendant's Sargeant's approval. Since 2011, Defendant Sargeant has made a mockery of those post-judgment proceedings, preferring to spend millions in legal fees rather than attend to his mounting debt under the Florida Court's Judgments. Having utterly shirked his obligation to pay his Judgment debt, Defendant Sargeant has never made a voluntary payment on the Judgments, of which the only partial satisfaction has come from forced levy and execution of Defendant Sargeant's interest in Sargeant Bulktainers, Inc. and his collections of guns, watches, and scooters – all of which totaled a mere $31,400 at judicial sale.

25. Notwithstanding, Defendant Sargeant has been described in the Palm Beach Post as the "Gulf Stream billionaire" and Defendant Naba'a is known by the local press in the Dominican Republic as "El Magnate del Asfalto" (the asphalt magnate). By claiming that he holds all his personal assets either as tenants by the entireties with his wife or through his bewildering array of corporate interests, Defendant Sargeant has managed to keep his corporate jet, his luxury Palm Beach oceanfront condominium, and his $10 million mansion in Gulfstream, Florida, safely outside the reach of his various creditors.

26. Indeed, despite their vast wealth, the Judgment Debtors claim they have nothing with which to pay Plaintiff and have done everything to frustrate the ultimate orders of the Florida Court – the Judgments. They have not been idle in their efforts to avoid payment – not just to Plaintiff but to other creditors as well – even engaging in further fraudulent conduct to make collection of the Judgments more difficult. Clearly, their intent, post-judgment, is to attempt to achieve through their own efforts what they could not achieve before the Florida Jury – an acquiescence or acceptance of their fraudulent conduct.

27. The background just provided with respect to Defendant Sargeant is intended to advise this Court of the type of individual involved. Defendant Sargeant has been determined to have engaged in fraudulent conduct through the judicial process and has clearly evidenced an intent to avoid obligations imposed upon him as a consequence of the judicial process. This Court, respectfully, should most assuredly recognize and take into account the absence of good faith evidenced by Defendant Sargeant over the course of time when contemplating how best to proceed.

28. Plaintiff has steadfastly attempted to have satisfied the Judgments awarded to him. He has done so not only with respect to his procurement of such Judgments, but also with respect to their satisfaction. Lawful means have always been employed by Plaintiff, thereby evidencing his respect for the judicial process and the laws obtaining in the United States. Unfortunately, Plaintiff's lawful measures have been thwarted by Defendants' unscrupulous tactics.

29. Plaintiff has initiated these proceedings asking this Court to utilize its broad legal and equitable powers to subject property in the hands of any person, including Defendants/Judgment Debtors, to judicial sale and satisfaction of the Judgments. At issue in this proceeding is Defendant Sargeant's membership interest in BTB and Defendant BTB itself, as well as Defendant Sargeant's interest in Sargeant Marine and Defendant Sargeant Marine itself.

30. Defendant Sargeant's interests in Defendant BTB and Defendant Sargeant Marine are valuable as Defendant BTB is imminently going to receive funds sufficient to satisfy the Judgments. These funds are being distributed pursuant to a global Sargeant family Settlement in

a pending bankruptcy.[5] In the wake of that bankruptcy, the Settlement purports to resolve all outstanding intra-family disputes, including several lawsuits filed by Defendant Sargeant, individually, against his father, brothers, and their corporate entities.[6] In exchange, the Sargeant family executed mutual global releases of all claims between them and the parties have agreed to pay approximately $52 million to Defendant BTB.

31. **The two (2) issues most problematic here, and, indeed, which require this Court's immediate attention and consideration with respect to this request for a TRO and injunctive relief, are as follows: First,** of the over $52 million Defendant BTB will receive, Defendant Sargeant will receive no consideration from the Settlement notwithstanding the fact that the Sargeant Settlement purports to release valuable claims Defendant Sargeant asserts on his own behalf against his family.[7] This is a blatant attempt to circumvent Plaintiff's reach and further make a mockery of the Florida Court's Judgments. **Second,** Defendant BTB has produced a "Zero Coupon Promissory Note" ("Promissory Note") purportedly obligating Defendant BTB to pay to Defendant Sargeant Marine the amount of $55,580,798.96, pre-payable at any time prior to the Promissory Note's maturity date.[8] The fraudulent character of the Promissory Note, like the sham consideration in the Sargeant Settlement above, is nothing more than another attempt by Defendant Sargeant to avoid satisfaction of the Florida Judgments entered against him. As demonstrated, Plaintiff has asserted meritorious claims (i) against Defendant Sargeant, (ii) against his membership interest in Defendant BTB, (iii) against

---

[5] *See* Sargeant Settlement Agreement, dated April 18, 2015 ("Settlement"), attached as **Exhibit F**, entered in connection with Case No. 14-29027-EPK; *In re: Trigeant Holdings, Ltd.*; In the United States Bankruptcy Court for the Southern District of Florida.

[6] *See* Settlement, Ex. F, ¶ 2.11 (defining "Pending Litigation").

[7] *See* Settlement, Ex. F, ¶ 4.1.

[8] A true and correct copy of the Zero Coupon Promissory Note is attached hereto as **Exhibit G**.

Defendant BTB itself, (iv) against his interest in Defendant Sargeant Marine, and (v) against Defendant Sargeant Marine itself.

32. The circumstances here require the entry of a TRO and, ultimately, a Temporary Injunction, until such time as this Court can determine the merits of these claims. What this Court shall learn is that these funds, although being paid to Defendant BTB, are entirely within Defendant Sargeant's control inasmuch as Defendant BTB and Defendant Sargeant Marine are both merely the alter egos of Defendant Sargeant. Indeed, the Plan of Reorganization filed in the Bankruptcy Court provides that the distributions to Defendant BTB "shall be made by wire transfer pursuant to instructions provided the appropriate Harry Party no later than 12:00 p.m. (noon) one (1) Business Day before the Effective Date" (emphasis added). Harry Sargeant and BTB's lawyers have refused to provide this information to Mr. Al Saleh on multiple occasions.

33. The Defendants/Judgment Debtors are fraudsters. Fraudsters do not change their stripes. Without serious judicial intervention at this stage, these recalcitrant Defendants/Judgment Debtors will continue to frustrate valid collection efforts, waste judicial labor and resources, and continue to make a mockery of the Florida Judgments.

## V.
## CAUSES OF ACTION

34. Plaintiff incorporates all of the proceeding paragraphs in each of the following causes of action as though set forth in full herein. Each of the following causes of action are asserted in the alternative and without waiving any individual cause of action.

**A. TURNOVER IN SATISFACTION OF JUDGMENTS.**

35. Pursuant to Texas Civil Practice & Remedies Code §31.002, *et seq.*, Plaintiff seeks injunctive relief and an Order from this Court compelling the turnover of property owned

52

by Defendants within the State of Texas, including present or future rights to property, in satisfaction of the Florida Judgments in favor of Plaintiff.

36. All as more fully described above, Plaintiff is a Judgment Creditor by virtue of three (3) Judgments entered by a Florida Court in his favor and against Defendants Sargeant, Naba'a and IOTC USA. In particular, the Florida Court has issued three (3) Judgments in connection with Case No. 50-2008-CA-0101870XXXX-MB-AJ; *Mohammad Anwar Farid Al-Saleh v. Harry Sargeant III, Mustafa Abu-Naba'a, and International Oil Trading Company, LLC*; In the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida. In particular, the Florida Court entered the first Judgment, the "Judgment on the Verdict," on September 19, 2011 in the amount of $28,800,000.00, together with post-judgment interest at the annual rate of six percent (6%) entered *nunc pro tunc* to July 27, 2011. The Florida Court entered the second judgment, the Final Cost Judgment," on February 9, 2012 in the amount of $85,489.97, together with post-judgment interest at the annual rate of four and three quarters percent (4.75%) entered *nunc pro tunc* to July 27, 2011. The Florida Court entered the third Judgment, the "Supplemental and Amended Supplemental Judgment Awarding Pre-Judgment Interest," on September 16, 2013 in the amount of $3,484,753.92, together with post-judgment interest at the annual rate of six percent (6%) entered *nunc pro tunc* to July 27, 2011.

37. At the time of filing of this action, the outstanding amount of the Florida Judgments, which are final and fully enforceable, with accumulated interest, is in excess of $38,000,000.00.

38. Plaintiff domesticated the Florida Judgments in the State of Texas with the commencement of this matter and upon the filing of his Omnibus Affidavit in Support of Enforcement of Foreign Judgments. The three (3) Florida Judgments are fully final and

enforceable within this State pursuant to the Texas Uniform Enforcement of Foreign Judgments Act, Texas Civil Practice & Remedies Code §35.001, *et seq.*

39. All as more fully described above and in further detail below, Defendants BTB and Sargeant Marine are entities in which Defendant Sargeant holds complete and sole ownership (Defendant BTB) or holds fifty percent (50%) ownership (Defendant Sargeant Marine) with Defendant Naba'a holding the remainder. Defendant Sargeant created and has utilized Defendants BTB and Sargeant Marine as mere tools or business conduits to such an extent that Defendants BTB and Sargeant Marine are nothing more than the alter egos of Defendant Sargeant.

40. As also more fully described above, Defendant BTB, and by extension and reason of the unity of interests between them, Defendants Sargeant and Sargeant Marine too, are set to receive approximately $52,000,000.00 in settlement of certain pending litigation and distributed from a pending bankruptcy involving other Sargeant-family entities. Such settlement proceeds are sufficient to satisfy the Florida Judgments in favor of Plaintiff, as domesticated and enforceable within the State of Texas, as against Defendant Sargeant, and his alter egos, Defendants BTB and Sargeant Marine. Such settlement proceeds are not exempt from attachment, execution or seizure for satisfaction of the Florida Judgments.

41. Given the nature of the property in the form of the settlement proceeds to be distributed from the pending bankruptcy involving another Sargeant-family entity, such property cannot be readily attached or levied on by ordinary legal process. Further, the relevant facts set forth above demonstrate Defendant Sargeant has, for many years, utilized a litany of shell corporations and other devices to avoid payment in satisfaction of the Florida Judgments in favor

54

of Plaintiff. Defendant Sargeant has, on more than one occasion and by more than one court, been found to have committed acts of fraud in order to deceive creditors.

42. As a result, Plaintiff respectfully requests that the Court Order Defendants Sargeant, Naba'a, IOTC USA, BTB and Sargeant Marine to turn over the property identified herein, together with all documents and records related to the property, to the Sheriff of Nueces County, Texas, for execution and application of the proceeds to the satisfaction of Plaintiff's Florida Judgments. In addition and in the alternative, Plaintiff asks the Court appoint a disinterested, qualified third person as receiver of the property and Order Defendant to turn over the property and the rights to receive such property, as well as all documents and records relating to the property, to the receiver. The Court should authorize and empower the receiver to seize or otherwise take possession and control of the property to apply the property to satisfaction of Plaintiff's Florida Judgments.

**B.     ACTION ON FOREIGN JUDGMENTS.**

43. Pursuant to Texas Civil Practice & Remedies Code §16.066, Plaintiff hereby brings an action upon foreign judgment as against Defendants Sargeant, Naba'a, IOTC USA, BTB and Sargeant Marine. Plaintiff domesticated the Florida Judgments in the State of Texas with the filing of Case No. 2014 DCV-5860-G; *Mohammad Answer Farid Al-Saleh v. Harry Sargeant III, Mustafa Abu Naba'a and International Oil Trading Company, LLC*; In the 319th Judicial District Court for Nueces County, Texas. The three (3) Florida Judgments are entitled to full faith and credit by this Texas Court and are fully final and enforceable within this State.

44. Accordingly, Plaintiff hereby requests that the Court issue all Orders, Writs or other measures by which execution upon the Florida Judgments may be had in favor of Plaintiff and as against Defendants Sargeant, BTB and Sargeant Marine.

55

## C. VIOLATION OF THE UNIFORM FRAUDULENT TRANSFERS ACT.

45. All as set forth above in further detail, the Florida Court has issued three (3) Judgments in connection with Case No. 50-2008-CA-0101870XXXX-MB-AJ; *Mohammad Anwar Farid Al-Saleh v. Harry Sargeant III, Mustafa Abu-Naba'a, and International Oil Trading Company, LLC*; In the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida. In particular, the Florida Court entered the first Judgment, the "Judgment on the Verdict," on September 19, 2011 in the amount of $28,800,000.00, together with post-judgment interest at the annual rate of six percent (6%) entered *nunc pro tunc* to July 27, 2011. The Florida Court entered the second judgment, the Final Cost Judgment," on February 9, 2012 in the amount of $85,489.97, together with post-judgment interest at the annual rate of four and three quarters percent (4.75%) entered *nunc pro tunc* to July 27, 2011. The Florida Court entered the third Judgment, the "Supplemental and Amended Supplemental Judgment Awarding Pre-Judgment Interest," on September 16, 2013 in the amount of $3,484,753.92, together with post-judgment interest at the annual rate of six percent (6%) entered *nunc pro tunc* to July 27, 2011.

46. Plaintiff domesticated the three (3) Florida Judgments in the State of Texas with the filing of its Omnibus Affidavit in Support of Enforcement of Foreign Judgments in this matter. The three (3) Florida Judgments are fully final and enforceable within this State pursuant to the Texas Uniform Enforcement of Foreign Judgments Act, Texas Civil Practice & Remedies Code §35.001, *et seq.*

47. The total amount of the Judgments is in excess of $38,000,000.00, which continues to increase due to the application of post-judgment interest in the amounts set forth in

the Judgments themselves. As of the date of the filing of this action, the Judgments remain due and owing to Plaintiff and unpaid by Defendants Sargeant, Naba'a and IOTC USA.

48.     Defendant BTB, and by extension Defendant Sargeant, is expected to receive, on June 8, 2015, in excess of $52,000,000.00 in payment resulting from the sale of the Corpus Christi Refinery in connection with Trigeant's bankruptcy pending in Florida. By virtue of his ownership in and dominion and control over Defendant BTB as more fully described above and as made the basis of Plaintiff's Vicarious Liability claim asserted below, Defendant Sargeant is the ultimate beneficiary of Defendant BTB's receipt of such funds. However, Defendant BTB, as the alter ego of Defendant Sargeant, has or is in the process of transferring such monies with the intent to delay, hinder and defraud Plaintiff. Defendant BTB, at the direction and instruction of Defendant Sargeant, has or is in the process of transferring such monies with the intent of preventing his creditors, including Plaintiff, from obtaining satisfaction of the Florida Judgments as described above.

49.     Plaintiff would further show and demonstrate that such transfers were or are being made despite a lack of adequate consideration and/or without receiving a reasonably equivalent value as defined in Texas Business & Commerce Code §24.001, *et seq.* In particular, there is no evidence of a service or goods provided by Defendant Sargeant Marine to Defendant BTB whereby Defendant BTB would have agreed to an arm's length transaction in exchange for such services or goods totaling more than $55,500,000.00 as specified in the Zero Coupon Promissory Note between Defendants BTB and Sargeant Marine. Furthermore, Defendant BTB's agreement to incur debts in excess of $55,500,000.00 as per the Zero Coupon Promissory Note results in the situation where such debts incurred by Defendant BTB are beyond its ability to pay.

50. Moreover, Plaintiff would further show and demonstrate that such transfers were or are being made and constitute transfers to "insiders" as defined in Texas Business & Commerce Code §24.001, *et seq.* In particular, the transfers between Defendants BTB and Sargeant Marine are being made at the direction and control of Defendant Sargeant, who is the sole and singular member of Defendant BTB, and who is a fifty percent (50%) owner of Sargeant Marine, with the remaining fifty percent (50%) ownership in Sargeant Marine resting with Defendant Naba'a.

51. Defendant Sargeant Marine has or is in the process of receiving such monies described above from Defendants Sargeant and BTB, with notice of both Defendants' intent to delay, hinder and defraud Plaintiff. In this connection, Plaintiff alleges and contends that Defendants Sargeant, BTB and Sargeant Marine are inextricably interrelated, with Defendants BTB and Sargeant Marine constituting the alter egos of Defendant Sargeant. Defendants have personal knowledge that Defendant BTB is receiving the settlement proceeds out of the bankruptcy of another Sargeant-family entity, Trigeant, and that Defendant Sargeant intends to hide the money from satisfaction of the Florida Judgments in favor of Plaintiff.

52. As a result of the fraudulent transfers identified above and as made actionable under the Uniform Fraudulent Transfers Act ("UFTA") pursuant to Texas Business & Commerce Code §24.001, *et seq.*, Plaintiff has been damaged well in excess of the minimum jurisdictional limits of this Court. Plaintiff is entitled to a declaration that the transfer is void to the extent necessary to satisfy Plaintiff's Florida Judgments as against Defendant Sargeant and his alter egos, Defendants BTB and Sargeant Marine. Plaintiff further seeks an injunction against Defendants Sargeant, BTB and Sargeant Marine to enjoin further disposition of the transferred assets and the appointment of a receiver to take charge of the transferred assets that they may be

applied in satisfaction of the Florida Judgments, and for any other and further relief the circumstances may require.

**D.    FRAUD AND CONSPIRACY TO COMMIT FRAUD.**

53.    Defendants' representations and omissions made to Plaintiff as described herein were material, and Defendants knew them to be false at the time they were made. Defendants intended that Plaintiff act on these false and material misrepresentations or omissions. By so proceeding, Plaintiff did, in fact, rely upon these false and material misrepresentations and/or omissions, which have caused Plaintiff injury and damages.

54.    Additionally and in the alternative, Defendants were a member of a combination of persons, with the object of their combination being the unlawful purpose of defrauding Plaintiff and illegally delaying, hindering and defrauding Plaintiff's various attempts to satisfy the Florida Judgments against Defendants/Judgment Debtors. Defendants, as members of this combination, had a meeting of the minds on the object and purpose of their combination, and one or more of the members committed unlawful, overt acts to further the object or course of action by, among other things, defrauding Plaintiff and frustrating enforcement and execution of the Florida Judgments.

55.    Defendants' fraudulent acts, fraudulent inducement and malicious conduct have caused Plaintiff to incur damages as described herein. Accordingly, Plaintiff seeks unliquidated damages within the jurisdictional limits of this Court, including its damages suffered as a direct and proximate result of Defendants' fraudulent acts as made necessary by this filing.

**E.    VICARIOUS LIABILITY AND DISREGARD OF CORPORATE FORM.**

56.    Defendant Sargeant organized and operated Defendants BTB and Sargeant Marine, of which Defendant is the sole member and a fifty percent (50%) owner, respectively, as

59

mere tools or business conduits to such an extent that Defendants BTB and Sargeant Marine are nothing more than the "alter ego" of Defendant Sargeant.

57. There exists a unity of financial interest, ownership and control by Defendant Sargeant in the organization and operation of Defendants BTB and Sargeant Marine. Defendants have abused such unity between and amongst themselves such that the separateness of the entities has ceased and the corporate form has been disregarded. Such acts and omissions are evidenced by and include, but are not limited to, (i) the degree to which individual and corporate property and assets are not kept separate but are, instead, intermingled; (ii) the ownership of Defendants BTB and Sargeant Marine by Defendant Sargeant and control exerted by Defendant Sargeant over the operations of Defendants BTB and Sargeant Marine creates a commonality amongst them; (iii) the comingling funds between Defendant Sargeant and Defendants BTB and Sargeant Marine; and (iv) representations that Defendants BTB and Sargeant Marine and Defendant Sargeant will alternatively back the other financially, including the assumption of debts and obligations of one on behalf of the other, among others.

58. As a result of these acts and omissions whereby Defendants BTB and Sargeant Marine have become a mere tool or business conduit of Defendant Sargeant, a disregard of the corporate form is necessary to as to prevent an injustice against Plaintiff should only the alter egos be held liable while the principal is allowed to evade liability.

59. Additionally and in the alternative, the corporate form between Defendant Sargeant and Defendants BTB and Sargeant Marine were used by Defendants collectively to evade existing legal obligations – the Florida Judgments and the Agreed Charging Order entered by this Court. Defendant Sargeant, by express representations and actions, obligated Defendants BTB and Sargeant Marine to undertake responsibility for his obligations, and him for Defendants

60

BTB and Sargeant Marine. As a result, the corporate veil existing between Defendant Sargeant and Defendants BTB and Sargeant Marine, if any, should be pierced so that Defendants collectively are held liable for the obligations of the other.

60. Additionally and further in the alternative, Defendant Sargeant caused Defendants BTB and Sargeant Marine to be used for the purpose of perpetrating an actual fraud upon Plaintiff as described above. Defendant Sargeant and Defendants BTB and Sargeant Marine perpetrated an actual fraud on Plaintiff primarily for the Defendants' direct benefit. Accordingly, the corporate veil existing between Defendant Sargeant and Defendants BTB and Sargeant Marine, if any, should be pierced so that Defendants collectively are held liable for the obligations of the other.

61. Additionally and further in the alternative, Defendant Sargeant and Defendants BTB and Sargeant Marine intentionally participated in a joint undertaking with a common business or pecuniary purpose. Both Defendant Sargeant and Defendants BTB and Sargeant Marine had an agreement, whether express or implied, with a common purpose to be carried out by Defendants collectively and as against Plaintiff. Additionally, Defendant Sargeant and Defendants BTB and Sargeant Marine enjoyed a community of pecuniary interest in their common purpose, and each enjoyed an equal right to control and direct the joint enterprise to the detriment of Plaintiff. While participating in such joint enterprise, and while within the scope of such joint enterprise, Defendant Sargeant and Defendants BTB and Sargeant Marine committed acts and/or omissions of fraud and fraudulent inducement against Plaintiff. As a result, Defendant Sargeant and Defendants BTB and Sargeant Marine are vicariously liable for the tortious conduct of the other as against Plaintiff made the basis of this litigation.

**F.    APPLICATION FOR APPOINTMENT OF RECEIVER.**

62.    Pursuant to Texas Civil Practice & Remedies Code §64.001, *et seq.* and under general equitable principles, Plaintiff respectfully requests the appointment of a Receiver to take possession of the property at issue. Appointment of a Receiver is appropriate under Texas Civil Practice & Remedies Code §64.001(a)(2) as Plaintiff is a Judgment Creditor over Defendants/Judgment Debtors Sargeant, Naba'a and IOTC USA, and as further alleged and described in particular detail herein, Defendants BTB and Sargeant Marine are mere the alter egos of Defendant Sargeant. Additionally and in the alternative, appointment of a Receiver is appropriate in equity and under Texas Civil Practice & Remedies Code §64.001(a)(6) as such relief is ancillary to Plaintiff's other, independent causes of action against Defendants and no less onerous remedy could afford Plaintiff the needed protection sought.

63.    Additionally and further in the alternative, appointment of a Receiver is appropriate under Texas Civil Practice & Remedies Code §31.002 in connection with a turnover action in order to satisfy a judgment. In particular, Defendants/Judgment Debtors own property that cannot be readily attached or levied upon by ordinary legal process but is not exempt from attachment, execution or seizure for the satisfaction of the Judgments. Notably, Texas law expressly allows for the appointment of a Receiver in connection with a turnover action without regard to satisfaction of the traditional requirements for such an appointment. *See Childre v. Great Southwest Life Ins. Co.*, 700 S.W.2d 284, 288 (Tex. App.—Dallas 1985, no writ); *Hennigan v. Hennigan*, 666 S.W.2d 322, 323 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Furthermore, a small amount is typically sufficient for the receivership bond when such appointment is made in connection with a turnover action. *Childre*, 700 S.W.2d at 289.

64.     Moreover, appointment of a Receiver without notice to Defendants is necessary inasmuch as Plaintiff would suffer material injury and prejudice by the delay necessary to provide notice of appointment.  In particular, the *ex parte* appointment of a Receiver is justified because the delay necessary to effectuate notice of the application for appointment would lead to imminent and irreparable injury to the property sought to be held by the receiver and/or would likely jeopardize the delivery of such property.  Additionally, Plaintiff alleges and contends the property sought to be held by the Receiver is about to be removed beyond the jurisdictional limits of this Court and across international borders by transference to Defendant Sargeant Marine, which is a corporation organized and existing in The Bahamas.

65.     The status of the property cannot be maintained and the rights of Plaintiff cannot be protected by any remedy other than the *ex parte* appointment of a Receiver.  In particular, the issuance of injunctive relief in the form of a Temporary Restraining Order ("TRO") and subsequent Temporary Injunction ("TI") are inadequate by themselves as such Orders do not take custody of funds available to satisfy Plaintiff's Florida Judgments that are within the hands of Defendant BTB and, by extension, Defendants Sargeant and Sargeant Marine.  As evidenced by (i) the great lengths to which Defendants/Judgment Debtors will go to avoid satisfaction of the Florida Judgments, and (ii) the Corpus Christi Federal Court's Findings of Fact and Conclusions of Law and resulting Final Judgment, Defendant Sargeant in particular acts as if he were immune from the mandates of any Court and the Rule of Law of any State.  Given Defendants/Judgment Debtors' past acts taken directly and expressly in avoidance of the Florida Judgments, a TRO or TI issued in connection with this matter will not adequately protect Plaintiff's right to the funds at issue and forming the subject of this action.  Defendants/Judgment Debtors have already and will continue in the future, no doubt, to spend, waste, secret, hide, or

otherwise remove the subject funds from the jurisdiction of this Court or any other within the United States to avoid satisfaction of the Florida Judgments.

66. As a result, Plaintiff will, in all reasonable probability, prevail as against Defendants. The property sought to be held by the Receiver has a value of $40,000,000.00, and is in the form of funds to be paid to Defendant BTB imminently. Defendant BTB has a right to the proceeds it is set to receive, and should it transfer such proceeds to Defendant Sargeant Marine, as an insider as described above, with the intent to delay, hinder and defraud, such transfer constitutes a fraudulent transfer. The proceeds will rest with Trigeant, LLC and/or Trigeant Holdings, Ltd., and will come to Defendant BTB as payments made to Defendants/Judgment Debtors stemming from the Trigeant bankruptcy. As provided above, such property is in danger of being lost or removed such that a Receiver is required in order to protect and conserve the property in question during the pendency of this action and to protect the interests of Plaintiff in the property.

67. Accordingly, Plaintiff requests that a Receiver be appointed and given the following powers in order to protect the property and the parties' interests in it: (i) Require Defendant BTB to instruct Trigeant, LLC and/or Trigeant Holdings, Ltd.'s counsel under the Settlement Agreement to pay the proceeds to Defendant BTB's account at Comerica Bank; (ii) Take charge of the property described herein, insure it against hazards and risks, and attend to its periodic maintenance; (iii) Take possession of and receive from Comerica Bank any money on deposit in the financial institution to the credit of Defendant BTB, and the receipt of the receiver for the funds will discharge Comerica Bank from further responsibility for accounting to Defendant BTB for funds for which the receiver has given a receipt; and (iv) Take all other

actions to preserve the property described herein and of which possession is taken as may be required and as further directed by this Court.

## VI.
## DAMAGES

68. As a direct and proximate result of Defendants' conduct as described herein, Plaintiff has suffered damages as follows:

a) Actual damages within the jurisdictional limits of the Court including, but not limited to, amounts due under the contract at issue;
b) General damages;
c) Out-of-pocket damages;
d) Benefit-of-the-bargain damages;
e) Special damages;
f) Incidental and consequential damages;
g) Prejudgment interest as provided by law;
h) Post-judgment interest at the maximum rate provided by law;
i) Costs of Court;
j) Attorneys' fees; and
k) All such further and other relief, whether at law or in equity, to which it may be justly entitled.

## VII.
## ATTORNEYS' FEES AND COSTS

69. Pursuant to Texas Business & Commerce Code §24.001, *et seq.*, Plaintiff seeks an award of Costs of Court and its reasonable and necessary attorneys' fees incurred in connection with its claims under the UFTA. Additionally, and pursuant to Texas Civil Practice & Remedies Code §31.002, *et seq.*, Plaintiff seeks an award of Costs of Court and its reasonable and necessary attorneys' fees incurred in connection with this matter and in seeking turnover of the property owned by Defendants within the State of Texas.

## VIII.
## CONDITIONS PRECEDENT

70. All conditions precedent to Plaintiff's claims for relief have occurred and/or have been satisfied, performed, excused or waived.

65

# IX.
## APPLICATION FOR TEMPORARY RESTRAINING ORDER
## AND INJUNCTIVE RELIEF

71.     Defendants Sargeant, BTB and Sargeant Marine have threatened irreparable harm to Plaintiff's property interests and rights by, among other things, engaging in fraudulent acts and other fraudulent transfers with the intent to delay, hinder and defraud Plaintiff in connection with his efforts to satisfy the Florida Judgments rendered in his favor.  In addition, Defendants have engaged in other fraudulent and evasive conduct in order to avoid satisfaction of the Florida Judgments and in order to dissipate, secrete, waste, deplete, secret or otherwise property and assets otherwise available for execution and satisfaction of the Florida Judgments.

72.     Plaintiff has alleged a cause of action against Defendants, and as indicated in this Petition and in his Unsworn Declaration subject to penalty of perjury, which is attached hereto as **Exhibit H** and incorporated by reference as though set forth fully herein, Plaintiff has shown (i) a probable right of recovery and likelihood of success on the merits, (ii) that Plaintiff will suffer imminent, irreparable harm without the Court's intervention, and (iii) that Plaintiff has no adequate remedy at law.  Plaintiff has a satisfactorily demonstrated the elements of a cause of action against Defendant BTB and a probable right of recover and likelihood of success on the merits by virtue of, among other things, the Florida Judgments in Plaintiff's favor, which he seeks to be enforced by this action.  Further, Plaintiff has demonstrated herein that he will suffer imminent, irreparable harm without the Court's intervention inasmuch as Plaintiff has learned the property and assets sufficient to satisfy the Florida Judgment (*e.g.*, the settlement proceeds payable facially to Defendant BTB) will be dispersed on Friday, June 5, 2015 and will be moved, dissipated or otherwise transferred beyond the jurisdictional reach of this or any other United States Court if immediate action is not taken to enjoin and restrain such conduct.

73.     Thus, as a direct and proximate result of Defendants' wrongful conduct as alleged in this Petition, Plaintiff has suffered and will continue imminent injury that will be irreparable and for which no remedy at law exists without the protections of a Temporary Restraining Order ("TRO") and injunctive relief. Plaintiff is willing to post the necessary and reasonable bond to facilitate the injunctive relief requested.

74.     The issuance of injunctive relief in the form of a TRO and subsequent Temporary Injunction ("TI") is required in order to prevent imminent and irreparable harm to Plaintiff. As noted elsewhere herein and as evidenced by (i) the great lengths to which Defendants/Judgment Debtors will go to avoid satisfaction of the Florida Judgments, and (ii) the Corpus Christi Federal Court's Findings of Fact and Conclusions of Law and resulting Final Judgment, Defendant Sargeant in particular acts as if he were immune from the mandates of any Court and the Rule of Law of any State. Given Defendants' past acts taken directly and expressly in avoidance of the Florida Judgments, a TRO or TI must be issued to protect Plaintiff's right to the funds at issue and forming the subject of this action and the Florida action. Unless specifically enjoined and restrained, Defendants have already and will continue in the future, no doubt, to spend, waste, secret, hide, or otherwise remove the subject funds from the jurisdiction of this Court or any other within the United States to avoid satisfaction of the Florida Judgments. Such conduct is wrongful because such conduct is intended solely to avoid the satisfaction of the Florida Judgments in Plaintiff's favor and to otherwise avoid usual legal process in execution upon such Judgments. Plaintiff has and will continue to be damaged and injured by Defendants' wrongful conduct as described in further detail above. Defendants' actions have caused Plaintiff damages in an amount within the jurisdictional limits of this Court.

75. Plaintiff requires injunctive relief to prevent Defendants Sargeant, BTB and Sargeant Marine from further spending, dissipating, depleting, secreting or otherwise moving, transferring or burdening the property and proceeds at issue. In particular, Plaintiff requires injunctive relief as to (i) To the extent not already done, Defendant BTB shall instruct Trigeant, LLC's and/or Trigeant, Ltd.'s counsel to direct payment of the settlement proceeds into Defendant BTB's account at Comerica Bank; (ii) To prevent Defendant BTB from transferring any amounts sufficient to satisfy the Florida Judgments in Plaintiff's favor; (iii) To prevent Defendant Sargeant Marine from receiving any of these funds in purported satisfaction of the fraudulently procured Zero Coupon Promissory Note; (iv) To prevent Defendant Sargeant Marine from accepting, receiving, undertaking, or otherwise acquiescing in the transfer of such amounts sufficient to satisfy the Florida Judgments in Plaintiff's favor from Defendant BTB; and (v) To prevent Defendant Sargeant from instructing, ordering, approving, authorizing or otherwise empowering Defendant BTB from transferring the such amounts sufficient to satisfy the Florida Judgments in Plaintiff's favor to Defendant Sargeant Marine.

76. With respect to the timing of the issuance of the requested TRO and any subsequent hearing on a TI, Plaintiff advises the Court that similar undertakings and issues are simultaneously before the Florida Court which originally issued the Florida Judgments.[9] At a hearing before the Florida Court on Monday, June 1, 2015, the Florida Court indicated it was not able to consider the particular injunctive relief requested by Plaintiff in that matter this week due to scheduling issues related to an ongoing jury trial, but will, likely, address the substantive issues at hearing in the future. However, as the funding of the settlement proceeds from the other Sargeant-family related business will occur on Friday, June 5, 2015, a hearing after June 5,

[9] Cause No. 50 2008 CA 010187 XXXX MB AJ; *Mohammad Anwar Farid Al-Saleh v. Harry Sargeant III, Mustafa Abu-Naba'a, and International Oil Trading Company, LLC*; In the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida.

68

2015 is not sufficient to protect Plaintiff from the imminent and irreparable harm he will certainly face in the interim period before the Florida Court acts. As a result, Plaintiff is requesting this Court enter and issue *ex parte* a TRO to hold the status quo by enjoining and restraining the conduct addressed herein only for sufficient time to allow the Florida Court to consider the substantive issues at a hearing on the Florida injunction motion, at which time Plaintiff would agree to participate in a TI hearing to determine whether or not the TRO should be extended through resolution of this litigation.

77.     Thus, the only adequate, effective and complete relief to Plaintiff is to restrain Defendants from engaging in, and/or further engaging in, certain proscribed conduct as set forth below pursuant to Rule 680, *et seq.*, of the Texas Rules of Civil Procedure, the Texas Civil Practice & Remedies Code §31.002, and Texas Civil Practice & Remedies Code §65.001, *et seq.* In order to preserve the status quo during the pendency of this action, Plaintiff seeks a TRO, and on hearing, a Temporary and Permanent Injunction ordering and immediately enjoining and restraining Defendants Sargeant, BTB and Sargeant Marine, including its agents, servants, employees, independent contractors, attorneys, representatives, successors in interest and those persons or entities in active concert or participation with them (collectively "Restrained Parties") for, *inter alia*, as follows:

> a. Defendants Sargeant and BTB shall direct $40,000,000.00 of the settlement proceeds received from the pending bankruptcy to be disbursed pursuant to the Settlement and to be deposited in BTB's Comerica Bank account ending in xx8591.

> b. Until further Order of this Court, the Restrained Parties, including Defendants Sargeant, BTB and Sargeant Marine, are restrained and enjoined from spending, wasting, secreting, hiding, removing, using, pledging, encumbering, transferring or otherwise disposing of the funds described immediately above.

> c. Until further Order of this Court, Defendant BTB is enjoined and restrained from transferring such amounts sufficient to satisfy the Florida Judgments in Plaintiff's

favor to Defendant Sargeant Marine in purported satisfaction of the fraudulently procured Zero Coupon Promissory Note.

d.  Until further Order of this Court, Defendant Sargeant is enjoined and restrained from instructing, ordering, approving, authorizing or otherwise empowering Defendant BTB from transferring the such amounts sufficient to satisfy the Florida Judgments in Plaintiff's favor to Defendant Sargeant Marine.

e.  Until further Order of this Court, Defendant Sargeant Marine is enjoined and restrained from accepting, receiving, undertaking, or otherwise acquiescing in the transfer of such amounts sufficient to satisfy the Florida Judgments in Plaintiff's favor from Defendant BTB.

f.  Enjoining the Restrained Parties from the destruction or deletion of any documents, evidence or record, electronic or otherwise, that relates to any of the matters implicated by this lawsuit or pertaining to Plaintiff including, but not limited to, all hard drives, backups, archives, and other possible sources of stored data, metadata or information.

## X.
## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Mohammad Anwar Farid Al Saleh respectfully requests that Defendants Harry Sargeant III, BTB Refining, LLC and Sargeant Marine, Ltd. be cited to appear and answer herein; that upon trial of this Cause, the Court enter judgment in favor of Plaintiff and as against Defendants Harry Sargeant III, BTB Refining, LLC and Sargeant Marine, Ltd. for the damages sought herein, whether actual, general, special, direct, indirect and/or consequential, in an amount in excess of the minimum jurisdictional limits of this Court; that the Court grant this Application for Temporary Restraining Order and Injunctive Relief, enjoining and restraining the Restrained Parties identified herein from the acts and conduct further identified herein; that the Court grant this Request for Appointment of Receiver to take possession and custody of the property at issue in order that it be applied to satisfy the Florida Judgments in favor of Plaintiff; and that Plaintiff be granted any and all other further relief, whether at law or in equity, to which he may show himself justly entitled.

70

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: _/s/ Daniel D. Pipitone_
    Daniel D. Pipitone
    State Bar No.
    Kenneth W. Bullock, II
    State Bar No. 24055227
Pennzoil Place
700 Milam, Suite 2700
Houston, Texas 77002
Telephone:(713) 222-4061
Facsimile: (713) 222-1475
dpipitone@munsch.com
kbullock@munsch.com

**ATTORNEYS FOR PLAINTIFF
MOHAMMAD ANWAR FARID AL-SALEH**

6160793v.1 15734/1

71

## CERTIFICATE WITH REGARD TO
## NOTICE OF APPLICATION FOR TEMPORARY RESTRAINING ORDER

The undersigned counsel for Plaintiff, Mohammad Anwar Farid Al-Saleh, does hereby certify in support of Plaintiff's Verified Amended Petition, Third-Party Petition, Application for Temporary Restraining Order and Injunctive Relief and Request for Appointment of Receiver, that it is not necessary to provide Defendants Harry Sargeant III, Mustafa Abu Naba'a, International Oil Trading Company, LLC, BTB Refining, LLC and Sargeant Marine, Ltd. with advanced Notice of Plaintiff's request for *ex parte* Temporary Restraining Order because Plaintiff will suffer imminent, irreparable harm without the Court's immediate intervention, Plaintiff has no adequate remedy at law, and because the facts making the relief requested herein only came to light the day before this filing, no adequate opportunity to provide notice is available in order to preserve the status quo.

The undersigned counsel for Plaintiff further certifies that a true and correct copy of the foregoing has been served upon all known counsel of record by electronic service, certified mail, return receipt requested, facsimile or other such acceptable form of service pursuant to the Texas Rules of Civil Procedure.

Daniel D. Pipitone

SUBSCRIBED AND SWORN TO before me, the undersigned authority, on the 2nd day of June 2015.

Notary Public, State of Texas

CRICELDA ANN BERNAL
NOTARY PUBLIC
STATE OF TEXAS
COMM. EXPIRES 10-22-2015

My Commission Expires: 10-22-2015

- 35 -

72

**Appendix D**

Order Granting Temporary Injunction

(July 2, 2015)

(CR 337-339)

CAUSE NO. 2014 DCV-5860-G

| | | |
|---|---|---|
| MOHAMMAD ANWAR FARID AL SALEH | § § | IN THE DISTRICT COURT FOR |
| Plaintiff/Judgment Creditor, | § § § § | |
| v. | § § | 319th JUDICIAL DISTRICT |
| HARRY SARGEANT III, MUSTAFA ABU-NABA'A, and INTERNATIONAL OIL TRADING COMPANY, LLC, BTB REFINING, LLC and SARGEANT MARINE, LTD. | § § § § § § | |
| Defendants/Judgment Debtors. | § | NUECES COUNTY, TEXAS |

## ORDER ON TEMPORARY INJUNCTION

Mohammad Anwar Farid Al Saleh, Plaintiff in the above-referenced and numbered cause ("Plaintiff"), has filed a Verified Amended Petition, Third-Party Petition, Application for Temporary Restraining Order and Injunctive Relief and Request for Appointment of Receiver ("Petition"). In connection therewith, this Court issued a Temporary Restraining Order on June 4, 2015, which was extended by further Order of this Court on June 16, 2015. Plaintiff has presented a request for a Temporary Injunction, regarding which the Court heard documentary and testimonial evidence on June 26, 2015 and on June 30, 2015.

Upon the Court's consideration of Plaintiff's Petition and the pleadings on file, the Unsworn Declaration made subject to the penalty of perjury supporting Plaintiff's Petition, and the documentary and testimonial evidence offered and received by this Court in support of the Temporary Injunction, the Court is of the opinion that Plaintiff will suffer an immediate and irreparable harm and injury if a Temporary Injunction does not issue and that Plaintiff has no adequate remedy at law. It appears from the facts set forth in such pleadings and from the

337

evidence offered and received that Plaintiff has met the elements required for issuance of a Temporary Injunction.

Furthermore, Plaintiff has demonstrated a probable right to the relief sought against Defendants and a likelihood of success on the merits. This Court finds that, based upon the pleadings and evidence before it, Plaintiff has demonstrated a probable right to relief by demonstrating, among other things, that Plaintiff is a creditor; that Plaintiff has a claim against Defendants; that Defendant Sargeant is a debtor; that Defendant BTB is the alter ego of Defendant Sargeant; and that Defendant BTB's incurring the obligation of the January 31, 2013 Zero Coupon Promissory Note in favor of Defendant Sargeant Marine constitutes a transfer made with the intent to delay, hinder and defraud.

Moreover, Plaintiff has demonstrated a probable, imminent and irreparable harm in that, unless Defendants are immediately restrained from committing the acts described below, Defendants will commit such acts before Plaintiff's claims can be decided. Plaintiff has demonstrated herein that he will suffer probable, imminent and irreparable harm and would lack an adequate remedy at law without the Court's intervention. Plaintiff has established more than a mere fear or apprehension that such property and assets will be moved, wasted, dissipated or otherwise transferred beyond the jurisdictional reach of this or any other United States Court if not immediately restrained based upon, among other things, testimony that a significant amount of the proceeds have already been transferred by BTB.

IT IS, THEREFORE, ORDERED that Defendants Sargeant, BTB, and the officers, agents, servants, employees, attorneys, principals, members, manager and other persons in active concert or participation with them, be, and hereby are, commanded forthwith to desist and refrain from using or transferring to any person or entity $21,828,446.65 or

- 2 -

338

transferring such amount out of the jurisdiction of this Court, from the date of this Order until further Order of this Court.

IT IS FURTHER ORDERED that this matter is set for trial on December 7, 2015. The Clerk of the Court is hereby directed to issue a Notice to the Parties accordingly.

The Clerk of the above-entitled Court shall forthwith, on the filing by Plaintiff of the bond hereinafter required, and on approving the same according to the law, issue a Temporary Injunction in conformity with the law and the terms of this Order.

This Order shall not be effective unless and until Plaintiff executes and files with the Clerk a bond, in conformity with the law, in the amount of $750,000.00.

SIGNED this 2nd day of July 2015 at 3 04 a.m./p.m.

_____
JUDGE PRESIDING

**Appendix E**

TEX. CIV. PRAC. & REM. CODE § 61.001

Vernon's Texas Statutes and Codes Annotated
   Civil Practice and Remedies Code (Refs & Annos)
      Title 3. Extraordinary Remedies
         Chapter 61. Attachment (Refs & Annos)
            Subchapter A. Availability of Remedy

V.T.C.A., Civil Practice & Remedies Code § 61.001

§ 61.001. General Grounds

Currentness

A writ of original attachment is available to a plaintiff in a suit if:

(1) the defendant is justly indebted to the plaintiff;

(2) the attachment is not sought for the purpose of injuring or harassing the defendant;

(3) the plaintiff will probably lose his debt unless the writ of attachment is issued; and

(4) specific grounds for the writ exist under Section 61.002.

**Credits**
Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985.

Notes of Decisions (21)

V. T. C. A., Civil Practice & Remedies Code § 61.001, TX CIV PRAC & REM § 61.001
Current through Chapters effective immediately through Chapter 46 of the 2015 Regular Session of the 84th Legislature

End of Document                                        © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# Appendix F

Texas Business Organizations Code § 101.112

(3) on the death of a member's spouse, an heir, devisee, personal representative, or other successor of the spouse, other than the member, to the extent of their respective membership interest, if any, is an assignee of the membership interest.

(b) This chapter does not impair an agreement for the purchase or sale of a membership interest at any time, including on the death or divorce of an owner of the membership interest.

Added by Acts 2011, 82nd Leg., R.S., Ch. 139 (S.B. 748), Sec. 36, eff. September 1, 2011.

Sec. 101.112. MEMBER'S MEMBERSHIP INTEREST SUBJECT TO CHARGING ORDER. (a) On application by a judgment creditor of a member of a limited liability company or of any other owner of a membership interest in a limited liability company, a court having jurisdiction may charge the membership interest of the judgment debtor to satisfy the judgment.

(b) If a court charges a membership interest with payment of a judgment as provided by Subsection (a), the judgment creditor has only the right to receive any distribution to which the judgment debtor would otherwise be entitled in respect of the membership interest.

(c) A charging order constitutes a lien on the judgment debtor's membership interest. The charging order lien may not be foreclosed on under this code or any other law.

(d) The entry of a charging order is the exclusive remedy by which a judgment creditor of a member or of any other owner of a membership interest may satisfy a judgment out of the judgment debtor's membership interest.

(e) This section may not be construed to deprive a member of a limited liability company or any other owner of a membership interest in a limited liability company of the benefit of any exemption laws applicable to the membership interest of the member or owner.

(f) A creditor of a member or of any other owner of a membership interest does not have the right to obtain possession of, or otherwise exercise legal or equitable remedies with respect to, the property of the limited liability company.

Acts 2003, 78th Leg., ch. 182, Sec. 1, eff. Jan. 1, 2006.
Amended by:
    Acts 2007, 80th Leg., R.S., Ch. 688 (H.B. 1737), Sec. 98, eff. September 1, 2007.
    Acts 2009, 81st Leg., R.S., Ch. 84 (S.B. 1442), Sec. 40, eff. September 1, 2009.

179